[Crim. No. 14117. Fourth Dist., Div. Two. Aug. 27, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
WAUTAUSA AHEJALIA JOHNSON, Defendant and Appellant.

COUNSEL

Floyd J. Siegal, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Jay M. Bloom and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GARDNER, P.** In this case we reject a concept which has crept into our judicial literature—the "arguable-but-unmeritorious" issue on appeal. We hold that an arguable issue on appeal consists of two elements. First, the issue must be one which, in counsel's professional opinion, is meritorious. That is not to say that the contention must necessarily achieve success. Rather, it must have a reasonable potential for success. Second, if successful, the issue must be such that, if resolved favorably to the appellant, the result will either be a reversal or a modification of the judgment.

Some historical perspective is necessary.

Prior to 1967, the procedure in California when appointed counsel could find no meritorious grounds for appeal was to file a "no merit" letter to that effect. (*In re Nash* (1964) 61 Cal.2d 491 [39 Cal.Rptr. 205, 393 P.2d 405].) *Anders* v. *California* (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396], found that practice to be constitutionally infirm. Supplementing *Anders*, *People* v. *Feggans* (1967) 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21], held that counsel must set forth the facts and the applicable law and "argue all issues that are arguable." (*Feggans*, at p. 447.) *Feggans* was followed by *People* v. *Rhoden* (1972) 6 Cal.3d 519 [99 Cal.Rptr. 751, 492 P.2d 1143], and *In re Smith* (1970) 3 Cal.3d 192 [90 Cal.Rptr. 1, 474 P.2d 969], which discussed the subject of arguable issues in the context of the facts of those cases. Then the Court of Appeal in *People* v. *Scobie* (1973) 36 Cal.App.3d 97 [111 Cal.Rptr. 600], held that *Smith* and *Rhoden* had developed a new concept: the "arguable-but-unmeritorious" issue which had to be argued as a requirement of due process. *People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071], held that when counsel has submitted a brief which raises no specific issues, there is an obligation on

the appellate court to independently review the record for arguable issues.

■ Thus, the usual practice is for counsel to either raise a substantive issue or submit a so-called *Wende* brief in which no substantive issue is raised but a request for independent review is made. In this case appointed counsel has raised a substantive issue *and* requested our independent review. This he presents on equal protection grounds, i.e., that the appellant whose counsel presents a substantive issue does not get as thorough a review by the court as the one who submits a *Wende* brief. On behalf of his client, he wants both—a substantive issue presented by himself, plus an independent review by the court.

We reject the equal protection argument. Under recognized principles of equal protection, *Wende* relief must be given to all persons similarly situated. That group would consist of all persons whose appointed counsel can find no arguable issue on appeal. Appellant is not in this group. Her counsel has found and argued a substantive contention of error. Thus, under any equal protection analysis, appellant is not entitled to the format established by *Wende*.

Nevertheless, counsel has a point. As long as the "arguable-but-unmeritorious" concept exists, appointed counsel finds himself in a pretty pickle. Under this concept, he must present marginal, nay, hopeless issues which at the same time prevents an independent review by the court.

This problem has not escaped the notice of the Supreme Court. In *Wende*, the court noted under its rule counsel might ultimately secure a more complete review for their clients when they cannot find an arguable issue than when specific issues are raised "for a review of the entire record is not necessarily required in the latter situation." (*Wende, supra*, at p. 442.)

So, too, the dissent in *Wende* took additional note of this problem. "The majority opinion leads to a further anomaly. Counsel who determines after conscientious examination of the record there may be marginal error could prejudice his client by asserting such error. If instead of urging the error he states the appeal is without merit and withdraws, and defendant asserts such error, the appellate court will afford defendant a more thorough, careful review of the entire record." (*Wende, supra*, p. 446, fn. 2.)

So, too, in a pre-*Wende* case,[1] *People* v. *McGee* (1978) 82 Cal.App. 3d 127, at page 129 [146 Cal.Rptr. 833], Justice Kaus said: "We might point out that appellate counsel who eschews manufacturing issues where none exists achieves a real benefit for his client. Here, in order to comply with the mandate of *Anders-Feggans* we carefully considered the record before advising defendant that he could file his own brief and before filing this opinion dismissing the case. In doing so, we reviewed not only those portions of the record which counsel discussed but the entire record—an inspection we are not compelled to make when counsel only raises specific issues on appeal. An attorney who cannot discover an arguable issue thus secures an appellate review of the record which is not necessarily enjoyed by his more feisty counterpart who raises one or two frivolous issues, easily disposed of by the inspection of a few pages of transcript." We think that the answer to this dilemma is to jettison the concept of "arguable-but-unmeritorious" issues. In so doing, we must part company with *Scobie*. In all candor, we are unable to read into *Smith* or *Rhoden* any such concept.

*Smith* repeatedly discusses "crucial" assignments of error. "[C]rucial assignments of error, which arguably might have resulted in a reversal. . . ." (At p. 202.) An assignment of error is "crucial in the context of the particular circumstances at hand." (At p. 203.) A "crucial matter" must be "raised as an assignment of error." (At p. 203, fn. 3.) While *Smith* does not contain an exact definition of what is "crucial," it refers to issues which are "potentially successful contentions on appeal," (at p. 203), and issues which "arguably might have justified a reversal." (At p. 201.) *Smith* definitely made it clear that it is not the duty of counsel to "contrive arguable issues." (At p. 198.)

*Rhoden* simply followed the lead of *Smith* and did not purport to redefine or change the rules of the game devised by *Smith*. Again, the court referred to "crucial assignments of error, which arguably might have resulted in reversal." (*Rhoden*, at p. 529.)

In discussing this subject, we said at page 175 of *People* v. *Von Staich* (1980) 101 Cal.App.3d 172, at page 175 [161 Cal.Rptr. 448]: "[t]o us an arguable issue means an issue of sufficient substance that it is going to result either in a reversal or a modification of the judgment

---

[1]*Wende* was mandated after the Court of Appeal, in the decision which gave birth to *Wende*, held that there was no need for independent review by the court after counsel had reviewed the case.

or is going to make new law. [Fn. omitted.] This whole process of appellate review is not some kind of a WPA project for the continued employment of judges, lawyers, secretaries, clerks, book sellers and office equipment salesmen. Hopefully, we do not engage in a process of setting up straw men and then knocking them down in a search for 'arguable' issues."

Thus, we reject the concept of "arguable-but-unmeritorious" issues on appeal and adopt the definition set forth in the opening paragraph of this opinion as the proper definition of an arguable issue. Once this determination is made, the dilemma now facing counsel disappears. No longer will counsel be faced with the compulsion to present marginal issues and thus risk denying his client independent review. When reasonably arguable issues are presented, the client gets the result of an attorney's thorough review of the record, plus the presentation to the court of a reasonably arguable issue. In the alternative, counsel may after that same review throw up his hands and say to the court, "You look it over, I can't find anything to argue about." Thus, a clear cut decision can be made which will do justice to the client. A reasonably arguable issue is presented or, in the alternative, the court conducts an independent review. Of course, this may add to the responsibilities of the Courts of Appeal as more nonissue briefs are filed but this is simply a burden those courts must accept under *Wende.*

At long last, we proceed to the issue presented on appeal.[2]

Defendant was convicted of four counts of issuing bank checks with insufficient funds and four counts of grand theft.

The defendant, Wautausa Ahejalia Johnson, using the pseudonym Dr. Dia W. McKens (W. C. Fields, who had a taste for exotic names, would have loved Mrs. Johnson) applied for credit cards at four department stores in Orange County. In order to obtain these credit cards, she made numerous fraudulent statements concerning her name, occupation, income and other relevant credit material. She received temporary

---

[2]We hasten to add that although we rule against the appellant on this issue, it is clearly an arguable issue under our definition. The fact that we reject it in no way detracts from its arguability. While we conclude that any error would have been harmless, such a conclusion is not a talismanic signal that the issue had no "reasonable potential for success" or that counsel faltered in the exercise of his professional judgment. An arguable issue does not inevitably achieve a favorable result. (*Smith, supra,* at p. 202.)

courtesy cards which allowed certain limited charges. She then purchased many expensive items up to those limits. When she had reached the limits on the temporary cards, she began to pass NSF checks for additional items. All of these checks were drawn on a bank account which never had more than a $410 balance in it although the checks totaled $3,400. (Mrs. Johnson must have acquired quite a wardrobe before her house of cards (and bad checks) collapsed.)

At trial, the defendant denied making any credit card applications, denied charging any merchandise and denied writing the bad checks.

On appeal, defendant contends that the court improperly admitted evidence on uncharged acts.

■ When defendant was arrested she had in her possession credit cards, checks and other aspects of identification in four different names which showed that she used the same M.O. on earlier occasions and had written other bad checks. This evidence was admitted on the issues of common scheme, plan, design, identification and intent. The ruling was proper. (*People* v. *Haslouer* (1978) 79 Cal.App.3d 818 [145 Cal. Rptr. 234].)

The prosecution had the burden of showing the specific intent to defraud. The possession of these items of identification established the intentional use of numerous identities. This, in turn, supported an inference that the use of these identities was done with the intent to defraud —a common plan of defrauding department stores by manipulating their credit and courtesy card systems. The fact that other checks bounced helped to establish that the checks were written with the knowledge that they were worthless. It is not necessary for the prosecution to wait until the defense puts on its case. The prosecution has the duty of proving all this as a part of its case-in-chief.

However, defendant now contends that the only issue was identity and that the uncharged acts were admissible only as to this issue. Unhappily for this contention, the only time the prosecution learned that the only issue was identity was after the uncharged acts were admitted, after the prosecution had rested and after the defendant had presented her tale to the jury. At the time this evidence was offered, the defendant did not concede these matters nor did she state that the only issue she would raise was identity, and, at no time did she offer to stipulate to any issue of intent.

■ Additionally, even if the court had erred in admitting this evidence the error would have been harmless. The evidence against the defendant was overwhelming. There were repeated eyewitness identifications of the defendant and two handwriting experts tied her to the crimes. It is not reasonably probable that a different result would have been reached had this evidence not been presented to the jury.

Judgment affirmed.

Kaufman, J., and McDaniel, J., concurred.

Appellant's petition for a Hearing by the Supreme Court was denied November 18, 1981.