Filed 4/21/14  P. v. Bailey CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>LESLIE M. BAILEY,<br><br>　　　Defendant and Appellant. | A140282<br><br>(San Francisco City and County<br>Super. Ct. No. 220268) |

A Bay Area Rapid Transit (BART) train operator observed Leslie M. Bailey masturbating in the train she was operating.  Shortly thereafter, Bailey approached the operator at the window as she was observing the train platform, with his erect penis exposed.  Bailey was charged with two counts of felony indecent exposure with a prior conviction (Pen. Code, § 314, subd. (1))[1] and one count of engaging in lewd conduct, a misdemeanor (§ 647, subd. (a)).  A jury found Bailey guilty of engaging in lewd conduct and not guilty on the first count of indecent exposure.  The jury was unable to reach a verdict on the second count of indecent exposure and the court later dismissed that count on the People's motion.  The court sentenced Bailey to unsupervised probation, conditioned on a county jail term that was satisfied by credit for time served.

Bailey's appointed counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) (see *Anders v. California* (1967) 386 U.S. 738), in which he raises no issue for appeal and asks this court for an independent review of the record.  (See also

---

[1]  Unless otherwise specified, all statutory citations are to the Penal Code.

*People v. Kelly* (2006) 40 Cal.4th 106, 124.)  Counsel attests that Bailey was advised of his right to file a supplemental brief.  Bailey has not exercised that right.

We have examined the entire record in accordance with *Wende*.  We agree with counsel that no arguable issue exists on appeal and affirm.

## BACKGROUND

### I. *Procedural Background*

In an amended information, filed on October 8, 2013, the People charged Bailey with three counts:  (1 and 2) felony indecent exposure with a prior conviction (§ 314, subd. (1)) and (3) engaging in lewd conduct, a misdemeanor (§ 647, subd. (a)).  Attendant to counts 1 and 2, both of which named Lori Hudson as the victim of Bailey's indecent exposure, [2] the information alleged prior convictions for:  (1) misdemeanor indecent exposure (§ 314, subd. (1)) on August 11, 2006, and (2) felony indecent exposure (§ 314, subd. (1)) on June 5, 2007.  Attendant to count 3, the information alleged the 2007 conviction for felony indecent exposure as a prior felony with a state prison sentence, pursuant to section 667.5, subdivision (b).

A jury found Bailey not guilty on count 1and guilty on count 3, but could not reach a verdict on count 2.

On October 21, 2013, the court suspended imposition of sentence, granted unsupervised probation for three years, conditioned on serving a term of 166 days in county jail, and imposed standard fees and fines.  Bailey received 166 days of credit for time served.  The court dismissed count 2 on the People's motion.

Bailey timely filed a notice of appeal on November 12, 2013.

### II. *Factual Background*

Lori Hudson, a BART train operator, stopped her train at the station at Mission and 16th Streets in San Francisco, California, about 1:24 p.m. on May 8, 2013.  Bailey entered the train, proceeded to a seat directly behind Hudson's cab area, dropped to his

---

[2]  The amended information differed from the original information, filed on May 31, 2013, in identifying only Hudson as the victim, instead of "Lori Hudson and BART patrons."

knees facing Hudson, and began to "gyrate on the seat," "simulating a sex act with the seat." Bailey's pants were halfway down and Hudson could see his red thong underwear.[3]

At Civic Center Station, the next station, Bailey left the train, but reentered before Hudson closed the doors and went back to the same seat. Bailey laid across the seat and began masturbating, with his feet hanging in the aisle and his pants down almost to his knees. Hudson saw Bailey's erect penis and saw Bailey touching his penis.

As Hudson pulled into the next station at Powell Street, she called BART "central" to report the incident. When Hudson turned around and observed Bailey again, she saw smoke coming from his seat, and Hudson reported this as well. Hudson did not see a cigarette or a pipe and did not smell cigarette smoke. Hudson was told to hold her position. Bailey then left the train; Hudson reported that fact and was given permission to proceed.

Hudson had her head outside the window to observe passengers entering and leaving the train. Bailey approached and asked if he could get back on the train, saying he wouldn't smoke again and was "just trying to get home." As Bailey talked to Hudson, a foot away from her, his erect penis was exposed, but he was not touching it. Hudson asked Bailey to step away and Bailey went to the opposite platform. Hudson drove her train from the station.

When Hudson reached the Dublin BART station she returned on another train to Powell Street station, where she made a statement and identified Bailey.

On May 8, 2013, BART Police Officer Jeffrey Zwetsloot was at Montgomery Street station on a train bound for Daly City when he received a call about a man masturbating on a train bound for Dublin who had left the train at Powell Street station. As part of his uniform, Zwetsloot wears a camera mounted on his collar that records audio and video. Zwetsloot proceeded to Powell Street station, where he and two other BART officers, Sergeant Carter and Alberto Alvarez, searched the station. After

---

[3] A police officer testified that he believed Bailey was wearing red boxer shorts when he was arrested.

3

searching the BART areas, Zwetsloot and Carter proceeded to the Muni level.[4]  At the elevator on the Muni level, Zwetsloot saw a "subject matching the description given by dispatch."  At trial, Zwetsloot identified Bailey as the subject he encountered at Powell Street station.

Zwetsloot directed Bailey to face away from him and place his hands behind his head.  Bailey, who seemed "very nervous" and "was sweating profusely," complied.  Zwetsloot smelled no alcohol on Bailey and Bailey was not smoking as he approached.  Zwetsloot detained Bailey and placed him in handcuffs for safety reasons.  Zwetsloot performed a patdown search for weapons and found none.  Intake deputies at the jail later found a crack pipe in Bailey's possession.

The entire encounter with Bailey was recorded on Zwetsloot's camera and the recording was played at trial.  In the recording, Bailey denied masturbating and claimed to be by the elevator because it was a convenient place to urinate.  There was, however, no urine on the floor.  Although it was not visible in the recording, Zwetsloot saw Bailey's erect penis protruding through the bottom of his shirt as he conducted the patdown search.  Even though the police were not questioning Bailey, Bailey was speaking "at random" and continued talking, despite being advised to wait until he had been read his rights.  Zwetsloot and Carter placed Bailey under arrest and took him to the police station on the concourse level of Powell Street station.  At the station, Zwetsloot took a pack of cigarettes from Bailey's pockets, as well as a bottle of Risperidone tablets with Bailey's name on it.  The quantity indicated on the bottle was 30 tablets.

Rahoof Khan is a civilian employee of the San Francisco Police Department, working in the fingerprint section.  Khan testified that Bailey's fingerprints match those on a fingerprint card attached to a certified copy of a "[section] 969[, subdivision](b) packet from the California Department of Corrections," indicating that Bailey was convicted of a violation of section 314, for indecent exposure, in 2007 in San Francisco.

---

[4]  It is a matter of common knowledge in San Francisco that the San Francisco Municipal Transportation agency (Muni) and BART share Powell Street Station, with platforms on different levels.

John Mendelson testified for the defense as an expert on the subject of pharmacology and cocaine addiction. Mendelson had reviewed the video recordings that were played at trial, but had not interviewed Bailey or reviewed his medical records. Because some evidence supported the inference that Bailey might have been smoking crack cocaine, the court, following an Evidence Code section 402 hearing, allowed Mendelson to testify concerning the effects of smoking crack cocaine. Defense counsel wanted to question Mendelson about the disorders for which Risperidone is prescribed and the behavioral effects for a patient who was not complying with a Risperidone prescription.[5] The court ruled that it would "allow the question of the time period that the dosage amount indicated on the bottle would be effective in the general population" but that Mendelson could not "talk about this defendant's symptoms of anything because he has never examined this defendant." The court explained further: "I don't think he can say that certain symptoms would show up again after a particular time period because he doesn't have any information on this defendant. He doesn't even know what the medication was prescribed for or by whom or for what purpose or what that physician who made the prescription was indicating by such a prescription. [¶] So I think you have to understand that this is a very narrow testimony on just what in the universe of his experience the variety of the kinds of things that Risper[i]done has been prescribed for."

Mendelson testified that Risperidone is an antipsychotic drug used to treat mania, schizophrenia, and psychosis. It is not a recreational drug. The effects of Risperidone generally wear off within 24 hours because the drug has a 12-hour half life.

Mendelson testified that the smoking of crack cocaine causes physical symptoms that can include sweating, though that would not be common. People might become talkative and garrulous under the influence of cocaine. High doses might cause a person to lose their ability to "tell where they are, who they are . . . what they are doing." High

---

[5] Defense counsel made an offer of proof that the prescription for 30 Risperidone tablets had been filled on April 28, 2013, and that, though Bailey was directed to take one-half to one tablet per day, 29 tablets remained in the bottle. She argued that this supported an inference that Bailey had not taken his medication on May 8, 2013.

doses also produce a condition of "uncontrolled and poorly thought through behaviors" and a user may be unaware of other people's perceptions of them and what they are doing. Paranoia and nervousness are consistent with cocaine intoxication. Insight and judgment are impaired. One who has a substantial psychiatric impairment is at higher risk for suffering adverse consequences from drug abuse. Use of cocaine does not impair motor skills, so the user may not appear to be intoxicated.

Defense counsel asked Mendelson: "[I]f you were aware that a person was seen actively smoking crack cocaine on a BART train, that a crack pipe was found with that person, that that person had a pill bottle of Risper[i]done in their possession . . . . [¶] Would that person's mental state likely be that that person would not be aware of the people around them?" The People objected that this was an improper hypothetical and the court sustained the objection.

Shortly afterwards, defense counsel asked Mendelson: "And would someone who is under the influence of a high dose of crack cocaine be likely to intend to display their genitals to other people with the intention of another people [*sic*] seeing them?" The People again objected and the court sustained the objection.

On cross-examination, Mendelson admitted that he did not know if Bailey was smoking cocaine on the BART train, why Bailey had a prescription for Risperidone, or how long he might have been taking Risperidone. Mendelson agreed that cocaine use, in lowering inhibitions, can enable a user to more freely do something they want to do. The prosecutor began to ask Mendelson: "And if you have a preexisting tendency . . . to expose your penis in public, and then you take cocaine—." Defense counsel objected that the hypothetical was improper and the court sustained the objection. The court also sustained an objection to the prosecutor's question whether, because Bailey had a prior conviction for the same behavior, it was "more or less likely that he would have committed this same behavior again."

The prosecutor asked Mendelson: "Would you agree that people can have a mental disorder and still commit a crime?" Mendelson answered, "Oh, absolutely."

6

Prior to redirect examination, defense counsel asked the court "to be allowed to explore further the [e]ffect of Risper[i]done—my client's possible mental condition in light of [the prosecutor's] final question to Dr. Mendelson in which she asked him to opine, and he did give an opinion about whether or not someone with a mental disorder could commit a crime." Defense counsel argued that the question "opened the door to further probing of the issue of whether or not, in light of the Risper[i]done, of [its] treatment for psychotic disorders, whether or not the existence of a psychotic mental disorder would impact, and in what way the sufferer's mental state and awareness." The prosecutor argued that defense counsel had been allowed to explore the question of Risperidone and its uses during direct examination and did not feel "that by me simply asking about a mental disorder, which came up on direct, it opened the door to anything." The court "did not perceive that the [prosecutor's] question opened up the examination in that regard" and defense counsel was not permitted to pose further hypothetical questions concerning Risperidone and mental state.

On redirect, defense counsel asked Mendelson, "[I]f someone was prescribed Risperidone, would it be a fair inference, in your pharmacological opinion, that that person suffers from some sort of psychosis?" The People objected and the court sustained the objection.

Defense counsel requested that the court instruct the jury with CALCRIM No. 3428, which states, in relevant part: "You have heard evidence that the defendant may have suffered from a mental (disease[,]/ [or] defect[,]/ [or] disorder). You may consider this evidence only for the limited purpose of deciding whether, at the time of the charged crime, the defendant acted [or failed to act] with the intent or mental state required for that crime." The court refused, stating: "The court does not find that there is sufficient evidence in the record to warrant the giving of [CALCRIM No.] 3428. The only evidence is that on his person, the defendant had a prescription bottle in his name with what was purported to be Risper[i]done. We don't actually know what the pills are or if that's even what they are. We don't know when if at all he has ever taken that medication. We don't know what it was prescribed for, if it was prescribed. [¶] We

7

don't know that the fact that the prescription was filled in April, what that means about what he has used or not used at any time or what the effects or his—any diagnosis of him. [¶] So the fact that there was such a pill bottle, that fact is in evidence. I didn't find that there was sufficient evidence to warrant this mental disease defect or disorder instruction in [CALCRIM No.] 3428. [¶] So the court declines to give that."

Defense counsel moved for a mistrial, arguing that the prosecutor's question to Dr. Mendelson about whether a person with a mental disorder could commit a crime was "inflammatory to the extent that I don't believe the jury could at this point give Mr. Bailey a fair trial." The court denied the motion.

In closing argument, defense counsel argued at length that Bailey did not have the specific intent required for conviction on the charges against him. In particular, defense counsel argued that the Risperidone prescription supported the implication that Bailey had an underlying mental disorder and that this implication was supported by his behavior.

## DISCUSSION

Bailey's appointed counsel filed an opening brief pursuant to *Wende* that set forth the facts of the case, but raised no specific issue, and asked this court to review the record and determine whether there are any arguable issues on appeal. "[A]n arguable issue on appeal consists of two elements. First, the issue must be one which, in counsel's professional opinion, is meritorious. That is not to say that the contention must necessarily achieve success. Rather, it must have a reasonable potential for success. Second, if successful, the issue must be such that, if resolved favorably to the appellant, the result will either be a reversal or a modification of the judgment." (*People v. Johnson* (1981) 123 Cal.App.3d 106, 109.)

The record shows that Bailey was at all times represented by competent counsel who safeguarded defendant's interests. No inadmissible evidence was improperly admitted and no admissible evidence was improperly excluded. The jury was properly instructed and the sentence was lawful. Our independent review reveals no arguable issues.

**DISPOSITION**

The judgment is affirmed.

_____
Brick, J.*

We concur:


_____
Kline, P.J.


_____
Haerle, J.

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.