Filed 2/2/21  P. v. Bradford CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074048 |
| v. | (Super.Ct.No. RIF1602493) |
| DEIRDRICK EUGENE BRADFORD, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Bernard Schwartz, Judge. Affirmed.

Larenda R. Delaini, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

I

INTRODUCTION

Defendant and appellant Deirdrick Eugene Bradford stole over $13,000 from a small hardware store. Following a jury trial, defendant was convicted of felony grand theft (Pen. Code,[1] § 487, subd. (a)). In a bifurcated proceeding, defendant admitted that he had suffered a prior prison term (§ 667.5, subd. (b)). After the trial court denied defendant's motion to reduce the offense to a misdemeanor, the court sentenced defendant to the middle term of two years split, with one year in county jail and one year on mandatory supervision pursuant to section 1170, subdivision (h).[2] The trial court awarded defendant four days of presentence custody credits, and, over defense counsel's objection, imposed various fines and fees. The court also ordered defendant to pay $13,136 in victim restitution.

Defendant appeals from the judgment. Appointed appellate counsel filed an opening brief that sets forth the facts of the case, outlines the issues appellate counsel considered, and asks this court to review the record and determine whether there are any arguable issues on appeal. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*); *Anders v. California* (1967) 386 U.S. 738 (*Anders*).) Based on our independent review of the record, we find no arguable issue and affirm the judgment.

_____

[1] All future statutory references are to the Penal Code unless otherwise stated.

[2] The trial court also imposed and stayed an additional year for the prior prison term allegation. In a resentencing hearing to correct sentencing errors, the trial court later dismissed the prior prison term allegation under Senate Bill No. 136.

## II

## FACTUAL BACKGROUND

A.     *The People's Case*

In 2014, Dale Gardner was the owner and president of Sunnymead Ace Hardware and, at times, conducted business with government agencies.  When he conducted such business, he would complete paperwork to set up the account and, after doing so, the agency would provide him with a purchase order.  The process varied from governmental agency to agency, but Gardner typically received payment within 30 to 90 days.  Sometimes Gardner received orders from third parties purchasing on behalf of a government agency.

The first time Gardner met defendant, who owned India Beauty, defendant sought to purchase 1,000 rolls of electrical tape for Caltrans.  Gardner had not previously conducted business with Caltrans.  Defendant informed Gardner that he had been awarded a contract and was the purchasing agent for Caltrans.  Gardner had never dealt with a purchasing agent.  Rather, he had dealt with employees at the government agency.  Defendant provided Gardner a seller's permit, which allowed defendant, as a wholesaler, to tax the final entity, rather than having each purchaser pay a sales tax.  Gardner eventually gave defendant the 30 or 40 rolls of electrical tape he had in stock and the remaining rolls about two days later.  Defendant paid for the electrical tape with a check, dated October 6, 2014.  Gardner deposited the check two days later, without a problem.

Sometime in November 2014, defendant obtained another purchase order request from Caltrans for paper towels, pallets of concrete, and safety glasses, and contacted Gardner to see if he could fulfill the order. Caltrans had agreed to pay up to $17,956.08 total, $16,000 pre-tax, for the items. Gardner researched the items for about one week to verify he could make an adequate profit on the order. The purchase was one of the largest orders that Gardner had filled, and he needed to special order most of the items. He ultimately quoted defendant $13,136, which allowed Gardner to make a $1,500 profit. Defendant accepted the quote three or four days later.

On November 28, 2014, defendant gave Gardner a check from his India Beauty company in the amount of $13,136 for the items. However, by the time Gardner noticed the check was not signed and could not be deposited, defendant had already left the store.

On December 15, 2014, defendant picked up the materials with his own truck and staff and gave Gardner a signed check in the amount of $13,136. Defendant told Gardner to hold the check for a few weeks, until the funds were available from Caltrans. Such a payment arrangement was uncommon to Gardner, but he agreed to hold the check.

On January 8, 2015, without any further contact with defendant, Gardner deposited the check. Four days later, on January 12, Gardner received a letter from his bank, indicating there were insufficient funds to cover the payment. Gardner thereafter sent defendant a text message regarding the situation. Defendant responded that he was out of state. About one week later, Gardner called defendant. Defendant stated he was out of state, and added that his partners must have withdrawn the money, which he would

4

check when he returned to town. Defendant also informed Gardner that he would pay him back but did not state when. For about two months thereafter, Gardner called defendant approximately 20 times from different phone numbers to no avail. Gardner never spoke with defendant or anyone from India Beauty again and never received payment from defendant for the picked up items.

Larry Vietti, a manager with Caltrans responsible for maintenance support and fleet optimization in Orange County, had experience working with purchase orders. When purchasing items for Caltrans, Vietti explained that employees submitted a detailed description of the items needed and sent it to various vendors for bidding. Once the bids were received, the employee had to select the lowest bid and, depending on the cost, a supervisor completed a purchase request. The purchase request then went through budgeting for approval and, once approved, the supervisor could receive a purchase order from headquarters.

Vietti reviewed a purchase order from November 2014 concerning India Beauty. The bid was for $16,626, and India Beauty represented that it would not use subcontractors. Caltrans paid India Beauty for the contract amount of $17,956.08. The contract was awarded on November 18, 2014.

Gardner eventually contacted law enforcement, and in December 2015, Riverside County Sheriff's Department Detective David Drexler investigated the matter. Detective Drexler served a search warrant on Comerica Bank, seeking to obtain account information for defendant and India Beauty. Detective Drexler learned that India

5

Beauty's account was created on September 5, 2014, and closed sometime in May 2015. The average monthly balance was between negative $8 and negative $335. The ending balance was $340. The only time the account had close to $13,000 was in January 2015, and the balance carried for only three days.

The January 2015 bank statement showed that someone had made a $17,956.08 deposit on January 2, 2015, with money from the State of California. Defendant's name and driver's license number was used to make at least one withdrawal the same day the check was deposited. The January 2015 statement also revealed a $9,414 withdrawal, and then a combination of withdrawals totaling $9,000, leaving the account with a negative balance of $273.53. By January 5, 2015, the account did not have enough money to cover the purchase from Gardner. The account was zeroed out in June 2015.

Defendant had a prior incident involving fraud in 2010, after he moved into a vacant home without the owner's consent and refused to leave. The homeowner contacted law enforcement and began eviction proceedings. When an officer contacted defendant, he provided the officer with a rental agreement. The officer saw a female at the home, along with children. The homeowner was nearby and appeared "shocked." The homeowner denied creating or signing the rental agreement and noted defendant and the others had lived at the property rent-free for six months to one year.

B.    *Defense Case*

Defendant and one other person started India Beauty to sell hair extensions to women. The business strictly operated on a cash-only basis. India Beauty thus did not

6

have a bank account. Sometime in 2014, India Beauty started doing business with Caltrans, and in September 2014, defendant opened an account at Comerica Bank. When defendant became a vendor for the State, he started with small contracts, between $600 and $800, because he did not have enough money to accept larger contracts. Defendant completed about six small transactions with Caltrans between September 5, 2014, and October 6, 2014.

At some point, defendant spoke with Gardner about becoming a potential supplier. He went to Gardner after other suppliers, including Home Depot, turned him down. Defendant acknowledged the first transaction with Gardner for 1,000 rolls of electrical tape. He noted that he had received the rolls of tape and paid Gardner with a check for the tape.

Defendant also acknowledged the second transaction with Gardner and explained that he went to Gardner to see if they could put together a lower bid than already received by Caltrans and obtain the contract. Initially, Gardner quoted defendant $4,500 over the phone. Defendant believed the bid "was, like, too cheap," but he accepted it anyway. Defendant then made the bid to Caltrans, won the contract, and stood to make about $10,000 in profit.

Caltrans later rejected some of the safety glasses because they were not dark enough, and defendant returned to Gardner to obtain different glasses. Gardner gave defendant sample glasses, which defendant provided to Caltrans for approval. Caltrans eventually selected a more expensive pair of safety glasses, requiring defendant to

7

provide another bid. Gardner quoted defendant $7,500 for all of the materials, including the replacement safety glasses. When all of the materials were ready, defendant rented a U-haul truck, picked up the materials from Gardner, and delivered the items to Caltrans in two separate deliveries. Defendant told Gardner he could add to the cost to build in profit for himself. Defendant also planned to pay Gardner a little extra out of pocket.

Sometime after the second delivery, defendant claimed that Gardner called him to let him know that he had made a mistake when pricing the safety glasses and that the new price for everything was $13,000. Gardner's call came about three hours after he and defendant had discussed what type of money they could make on Caltrans contracts and after defendant showed Gardner a $300,000 purchase order from Caltrans. Defendant also claimed that someone from India Beauty left a blank check with Gardner, at Gardner's request, because Gardner wanted collateral. Gardner later called defendant and said he would feel better with a signed check. Defendant's secretary thereafter filled out another check, leaving the amount blank. The amount was left blank because defendant and Gardner had not agreed on the price and defendant planned to pay Gardner in cash.

After India Beauty received payment from Caltrans, defendant paid his employees, leaving him with about $9,000. He offered to give Gardner $7,500 because Gardner raised the price after the materials had already been delivered. Defendant believed Gardner raised the price only because he saw how much profit defendant would make.

When Gardner declined to do additional transactions with defendant, India Beauty went out of business, despite defendant trying to keep the business going.

Defendant explained that he was in Arizona when Gardner called and said the check had not cleared. Defendant was driving and did not have clear reception on his cell phone. He could not recall telling Gardner that he would look into things when he returned to California. Defendant acknowledged that he still owed money to Gardner, but Gardner had declined the $7,500 offer. Defendant attempted to get other Caltrans contracts, but they all fell through.

Defendant intended to pay for the materials he received from Gardner, but Gardner wanted $13,000, which defendant did not have. Defendant acknowledged that he spoke with a detective in April 2016. He thought he mentioned the price discrepancies when he spoke with the detective but did not recall telling the detective that Caltrans never paid him.

C.   *The People's Rebuttal*

Detective Drexler explained that he spoke with defendant on April 20, 2016, and that he recorded the conversation. During the conversation, defendant, who was driving a truck in Washington state at the time, indicated that he had a business relationship with Gardner, but did not pay Gardner because defendant did not get all his money from Caltrans. Defendant's secretary wrote Sunnymead Ace Hardware a check, but Gardner knew that he was not supposed to deposit the check. Defendant claimed that something went wrong between him and Caltrans and that Caltrans never paid him. When

9

Detective Drexler informed defendant that Caltrans paid him more than $17,000, defendant asserted he would have his lawyer call Detective Drexler. Nonetheless, defendant maintained that he had not done anything wrong and stated, "bad business happened," causing Sunnymead to not get paid. Defendant averred that he planned to pay Gardner when he received his income tax payment.

## III

## DISCUSSION

After defendant appealed, upon his request, this court appointed counsel to represent him on appeal. Counsel has filed a brief under the authority of *Wende*, *supra*, 25 Cal.3d 436 and *Anders*, *supra*, 386 U.S. 738, setting forth a statement of the case, a summary of the facts and potential arguable issues, and requesting this court to conduct an independent review of the record.

We offered defendant an opportunity to file a personal supplemental brief, and he has not done so.

An appellate court conducts a review of the entire record to determine whether the record reveals any issues which, if resolved favorably to defendant, would result in reversal or modification of the judgment. (*Wende*, *supra*, 25 Cal.3d at pp. 441-442; *People v. Feggans* (1967) 67 Cal.2d 444, 447-448; *Anders*, *supra*, 386 U.S. at p. 744; see *People v. Johnson* (1981) 123 Cal.App.3d 106, 109-112.)

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the entire record for potential error and find no arguable error that would result in a disposition more favorable to defendant.

IV

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

SLOUGH
J.

11