Filed 1/5/24  P. v. Castro CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E080884 |
| v. | (Super.Ct.No. RIF2104733) |
| RALPH GALLATIN CASTRO, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mark E. Johnson, Judge.

Affirmed.

Thien Huong Tran, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

## I.

## INTRODUCTION

Defendant and appellant Ralph Gallatin Castro, Jr., orally copulated his then six-year-old stepgranddaughter on several occasions. A jury found defendant guilty of two counts of two counts of oral copulation on a child 10 years of age or younger (Pen. Code, § 288.7, subd. (b); counts 1 & 2) and two counts of lewd and lascivious acts upon a child under 14 years of age (Pen. Code, § 288, subd. (a); counts 3 & 4). After the trial court denied defendant's motions for a new trial and judgment notwithstanding the verdict, defendant was sentenced to an aggregate term of eight years with 525 days' credit[1] for time served as follows: the middle term of six years on count 3, plus the middle term of two years on count 4; the court imposed 15 years to life for counts 1 and 2 each but stayed both sentences pursuant to Penal Code section 654. The court also ordered defendant to pay a $300 restitution fine (Pen. Code, § 1202.4, subd.(b)), a $160 court operations fee (Pen. Code, § 1465.8), and a $120 criminal conviction assessment fee (Gov. Code, § 70373), and stayed a $300 parole revocation fine (Pen. Code, § 1202.45). Defendant appeals from an order after judgment. Based on our independent review of the record, we find no error and affirm the judgment.

---

[1] Appointed appellate counsel notes that defendant is actually entitled to 460 actual days plus 69 conduct days, for a total of 529 days of presentence credits and that an ex parte motion to correct the calculation error is currently pending in the superior court.

## II.

## FACTUAL BACKGROUND

Defendant and L.C. were married in 1997 and had one son together. L.C. believed their marriage was "[f]ine," but was devoid of sexual intimacy towards the end, and she had contemplated divorce over the years. At the time of trial in January 2023, L.C. was in the process of divorcing defendant.

In February 2021, defendant and L.C. lived in Moreno Valley with several of L.C.'s grandchildren, including then six-year-old K.K., as well as a foster child. K.K. had lived with L.C. and defendant since she was two years old. Defendant was not the biological grandparent of K.K. and her siblings, but the children called him "Papa."

K.K. shared a bedroom with her sisters. Each had a separate bed. L.C. told defendant that he was not allowed in the girls' bedroom as she believed there was not any reason for him to be there and it made her feel uncomfortable, given her experience when she was a child. L.C. thought defendant heeded her request but one time she saw him coming out of the girls' bedroom.

Around this same time in February 2021, K.K.'s half sister, who was 11 years old at the time, came to visit from Las Vegas and slept in the girls' bedroom. One night before K.K.'s birthday, her half sister was in bed, on her phone, when she saw defendant shine a flashlight into the room around 11 p.m. or 12 a.m. K.K.'s half sister did not want to get in trouble for being on her phone, so she pretended she was asleep. She saw defendant enter the room, go towards K.K.'s bed, and kneel down for about five minutes.

3

Defendant came into the bedroom two more times during K.K.'s half sister's visit, the last time being the night of K.K.'s seventh birthday. During one of the times, K.K.'s half sister heard K.K. tell defendant to stop or that she was tired. She also believed that she heard K.K. crying one of the times. K.K.'s half sister never saw defendant go to the bedroom window to look outside.

K.K.'s half sister informed L.C. about the incidents the following morning on each occasion. L.C. initially did not do anything about the information but noted the first incident on her calendar. L.C. eventually asked K.K. whether defendant was waking her up. K.K. replied in the affirmative. That same day, L.C. asked defendant to leave, and he did.

In March 2021, K.K. spoke to an investigator with child protective services (CPS). In response to the investigator's question whether anybody, including her grandfather, had touched her inappropriately, K.K. stated she did not know. At the CPS investigator's urging, L.C. reported defendant to law enforcement.

At trial, K.K. testified that, since she was about five or six years old, defendant would come into her room in the middle of the night, pull down her underwear to her knees, and lick her vagina. After a few minutes, he would pull K.K.'s underwear back up and leave. K.K. recalled it happening "way more than once" and thought it was "[m]aybe 20" times but could not recall each time specifically. She remembered one time she was wearing purple pajamas, one time zebra pajamas, and another time leaf print pajamas. Sometimes K.K. tried to push defendant away and told him to go away. One time K.K.

4

heard L.C. catching defendant coming out of her room and L.C. asking defendant what he was doing. Defendant said he had been looking out the bedroom window. Even though L.C. sometimes asked her and her sisters whether defendant came into their bedroom to "bother[ ]" them, K.K. never said anything because she thought she would get in trouble. Shortly after her seventh birthday, however, K.K. told L.C. about defendant orally copulating her during the night. She wanted "it to stop that day." K.K. was happy to be talking about what happened at trial and "to tell all the evidence." She denied that L.C. told her what to say.

A clinical and forensic psychologist testified about Child Sexual Abuse Accommodation Syndrome (CSAAS) which, although not a diagnostic tool, may be used to describe or rationalize a pattern of behavior typically exhibited by children who have been sexually abused. The psychologist explained that there are five common components of CSAAS: secrecy, helplessness, entrapments, and accommodation, delayed unconvincing disclosure, and retraction or recantation. Secrecy is common especially if the perpetrator is a family member or someone they know well. The psychologist acknowledged that there can be false allegations of sexual abuse. The most common reason is that the child is being pressured by one parent to falsely accuse the other parent in a disputed custody battle. Another reason, although rare, is that the child has severe psychological problems. It is also possible for a child to be susceptible to the idea of being sexually abused if an adult is always talking or asking about it.

Defendant testified on his own behalf. In relevant part, he claimed that his relationship with L.C. had its "disagreements," was "hostile" at times, and was not "as loving" in the end. Nonetheless, he thought they had a good marriage for the most part. Since about 2017, he had health issues that affected his ability to get aroused and their relationship became platonic. He was unable to get aroused even while watching adult pornographic videos, and he was not interested in taking pills to achieve an erection.

Defendant was aware that L.C. did not want him in the girls' bedroom. However, he went inside the girls' bedroom on a few occasions to look out the window as it had a good view of the driveway and the street, where his car was parked. He explained that at the time there was an uptick in catalytic converters being stolen out of cars, so he wanted to keep an eye on his car. One time when he was in the bedroom, K.K. woke up and he told her to go back to sleep. Defendant denied touching K.K. or any other child inappropriately. He also denied orally copulating K.K.'s vagina. He recalled on or about February 16, 2021, L.C. calling him and telling him to pack his things and move out. She was very angry and told him that she knew what he did. He did not know what she was talking about but knew better than to try to have a rational conversation with her when she was angry. He thus moved out that day. He did not learn he was being accused of molesting K.K. until months later when criminal charges were filed.

Defendant also presented testimony of a forensic psychologist with whom he met in July 2022. After talking with defendant for about two hours and reviewing certain documents, including the police report and the preliminary hearing transcript, the forensic

6

psychologist prepared an evaluation report. The doctor could not say whether or not the alleged abuse occurred, but he did determine that defendant was a level 1 on the Sexual Offender Risk Appraisal Guide (SORAG), which takes into account several factors. Level 1 was the lowest score possible on the SORAG for males, as being male is an automatic one point. Level 1 meant that, aside from his gender, defendant did not exhibit any other factors associated with sexual molestation of children. The doctor explained that defendant had no prior sexual or other criminal offenses; he did not suffer from serious drug or alcohol abuse; he did not experience job instability, relationship instability, or living instability; he was married; and there were not multiple victims.

## III.

## DISCUSSION

After defendant appealed, upon his request, this court appointed counsel to represent him. Upon examination of the record, counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*), setting forth a statement of the case, a summary of the facts and potential arguable issues, and requesting this court to conduct an independent review of the record. Counsel identifies the possible issues as (1) whether the trial court erred in denying defendant's motions for new trial and judgment notwithstanding the verdict; and (2) whether there was sufficient evidence of intent to sexually arouse as required for lewd and lascivious behavior under Penal Code section 288, subdivision (a).

We offered defendant an opportunity to file a personal supplemental brief, but he has not done so.

An appellate court conducts a review of the entire record to determine whether the record reveals any issues which, if resolved favorably to defendant, would result in reversal or modification of the judgment. (*Wende*, *supra*, 25 Cal.3d at pp. 441-442; *People v. Feggans* (1967) 67 Cal.2d 444, 447-448; *Anders*, *supra*, 386 U.S. at p. 744; see *People v. Johnson* (1981) 123 Cal.App.3d 106, 109-112.)

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the entire record for potential error and find no arguable error that would result in a disposition more favorable to defendant.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:


McKINSTER

Acting P. J.


MILLER

J.


8