Filed 12/18/25  P. v. Sanchez CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JORDAN SANCHEZ,<br><br>     Defendant and Appellant. | E085338<br><br>(Super.Ct.No. SWF2200421)<br><br>OPINION |


APPEAL from the Superior Court of Riverside County.  F. Paul Dickerson III, Judge.  Affirmed

Laura Arnold, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

In this *Anders*/*Wende* matter,[1] defendant and appellant Jordan Sanchez appeals from the trial court's entry of judgment following a jury verdict convicting him of three counts of sexual assault of a person unable to resist due to intoxication. Specifically, defendant was convicted of rape, sexual penetration by any unknown object, and oral copulation inflicted against his former fiancée, Jane Doe. (Pen. Code,[2] §§ 261, subd. (a)(3), 289, subd. (e), 287, subd. (i)). In a bifurcated proceeding, the trial court found four alleged aggravating factors to be true, including that the victim was particularly vulnerable and that defendant took advantage of a position of trust or confidence. (Cal. Rules of Court, rule 4.421(a)(3) & (11); see also *id*. subds. (a)(1) & (b)(1).) The court sentenced defendant to an aggregate term of seven years in state prison. Our independent *Anders* and *Wende* review on appeal discloses no issues of arguable merit on which to request briefing by the parties. (See *People v. Johnson* (1981) 123 Cal.App.3d 106, 109 ["an arguable issue" requires "a reasonable potential for success" on appeal].) We therefore affirm the judgment.

## BACKGROUND AND OUR REVIEW

In September 2021, defendant and Doe spent the late afternoon drinking alcohol with friends in a parking lot near the beach in Huntington Beach. Doe consumed Gatorade and watermelon-flavored vodka that she mixed in a cup. After three drinks, she "blacked out" and when she regained consciousness, she was sweating and vomiting.

---

[1] *Anders v. California* (1967) 386 U.S. 738 (*Anders*); *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).

[2] All further statutory references are to the Penal Code unless otherwise indicated.

Defendant held her hair back while she vomited. Though they were no longer engaged, Doe considered defendant to be her best friend at the time. Before she blacked out again, Doe overheard one of the women present, Alyssa, warn defendant not to take advantage of Doe in her condition. Doe could tell defendant was upset by the comment.

The next thing Doe remembered was defendant opening the door of his car for her outside her home in Lake Elsinore, where she lived with her parents. Footage from the Ring surveillance camera at her front door was played for the jury. The footage showed Doe and defendant's arrival around 10:30 p.m. at night. Doe appeared to be very intoxicated; she could not walk straight and had to be supported by defendant, who guided her inside.

Doe remembered taking a shower. She testified regarding the acts of sexual assault defendant committed against her as she went in and out of consciousness. Doe awoke at 5:00 a.m. the next morning on the floor of her bedroom. She still felt very sick and her shoulders, arms, vagina, and mouth were sore. Defendant's phone call awakened her. He apologized to her, saying, " 'I'm so sorry' " and " 'I fucked up. I made a mistake. I'm a piece of shit.' " He asked Doe not to contact the police.

Doe felt devastated, betrayed, and violated. She contacted law enforcement that evening. A forensic nurse examiner testified at trial. Doe's pelvic exam disclosed no abnormal findings; she had a small scrape on her sternum. The nurse noted as part of her examination that Doe commented on her poor, fragmented memory of the previous day. Doe acknowledged consuming alcohol, but wondered whether she had ingested a drug of some kind because did not ordinarily feel so sick after drinking. Doe did not

3

intentionally consume any drug.  Doe testified at trial that while she had previously experienced drinking alcohol to the point of vomiting, this time was "very" different in that "I couldn't move.  I was very sick.  I had gotten sick while being drunk before, but it wasn't to this extent."

A deputy sheriff testified that he monitored a pretext call between Doe and defendant.  The call was played for the jury.  During the call, when Doe said, "You raped me," defendant admitted, "I did.  And I hate myself for it."

A crime lab technician testified that male DNA was detected on swabs taken from Doe's exterior genital area during her forensic exam.  Male DNA was also detected on swabs from her breasts, with the DNA sample from her left breast indicating defendant was 450,000 times the more likely contributor than any unrelated male.  Male DNA was also detected on the swab taken from Doe's mouth, but the sample was insufficient for further testing; no male DNA was detected on the vaginal swab.

Defendant testified Doe consented to sexual contact on the evening in question.  According to defendant, Doe said to him when he drove her home after the beach that she wanted to "hook up" when they got back to her house.  He testified Doe did not appear to be intoxicated to him then or when they arrived there, including as depicted on the Ring camera footage.  He thought she stumbled on the way to her front door because she twisted her ankle.  He rated her level of intoxication on a scale of one to 10 at that time as "one" or "even a zero."  He believed she was sober and did not think she had been intoxicated at any time during the day, except perhaps right when she started drinking.

4

Defendant also testified that he and Doe used condoms on the previous occasions they had intercourse. According to defendant, he did not have condoms with him at Doe's and he did not buy any at a gas station stop on the way to her house because he lacked funds to "swipe my card." He recalled the comment Alyssa made at the beach warning him not to take advantage of Doe in her condition. The comment did not upset him or seem unusual to him. Instead, he told Alyssa "she's not drunk. She's just throwing up—making herself throw up."

Defendant's friend Anthony Romero testified that he did not think Doe was particularly intoxicated while they were at the beach. He drove defendant and Doe from the beach to defendant's car, which was parked at Romero's. Romero testified he thought both were sober by the time they arrived at his apartment.

Following the jury's verdict, defendant retained new counsel and moved for a new trial. The trial court denied the motion. The court sentenced defendant to a seven-year term, as noted above. Defendant appealed and this court appointed appellate counsel.

Counsel's review of the record and legal research uncovered no arguable issues to raise on appeal, including after consultation with Appellate Defenders, Inc. In reaching that conclusion, counsel has noted two related issues for our potential reconsideration in our independent review. First, did the trial court err in not specifically advising defendant that his right to a jury trial, and the consequences of waiving that right, extended to the bifurcated aggravating factors? Second, if the absence of such an advisement was error, was the error prejudicial given the low term the court imposed on the principal count?

Having independently reviewed the record for potential error, we are satisfied defendant's attorney has fully complied with the responsibilities of counsel and no arguable appellate issue exists. (*People v. Kelly* (2006) 40 Cal.4th 106, 126; *Wende*, *supra*, 25 Cal.3d at pp. 441-442.)

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

J.

We concur:

McKINSTER

Acting P. J.

RAPHAEL

J.