Filed 1/4/22  P. v. Suknaich CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G060600 |
| v. | (Super. Ct. No. 03WF0232) |
| JAMES SUKNAICH, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Gary S. Paer, Judge. Affirmed.

James Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*        \*        \*

Defendant James Suknaich filed a petition seeking to vacate his prior murder conviction and be resentenced. (Pen. Code, § 1170.95.)[1] The trial court eventually issued an order to show cause and conducted a hearing on the merits. The court found the prosecution had proven defendant was guilty of murder beyond a reasonable doubt. The court found defendant guilty under an implied malice theory, which is a valid theory under current law. (See § 188, subd. (a)(1).) The court consequently denied defendant's section 1170.95 petition. Defendant appealed.

Defendant's appointed appellate counsel filed an opening brief identifying no arguable issues. (See *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) Defendant did not file a supplemental brief on his own behalf.

In the interests of justice, this court has independently reviewed the record and found no arguable issues. (See *People v. Flores* (2020) 54 Cal.App.5th 266, 269.) Thus, we affirm the order of the trial court denying defendant's section 1170.95 petition.

I

FACTS AND PROCEDURAL HISTORY

We provide the following "brief description of the facts and procedural history of the case, the crimes of which the defendant was convicted, and the punishment imposed." (*People v. Kelly* (2006) 40 Cal.4th 106, 109-110.)

The following facts are taken from this court's unpublished opinion in *People v. Suknaich* (June 15, 2006, G035578 [nonpub. opn.] (*Suknaich I*):

"In the early morning hours of September 27, 1986, Garden Grove Police Officer John Keely discovered the body of Kiva Bible lying face down in the middle of Lucille Street in Garden Grove. Bible died from exsanguination caused by five stab

_____

[1] Further undesignated statutory references are to the Penal Code.

2

wounds in her chest. Her arms showed signs of intravenous drug use. Her wrists had red marks consistent with the use of restraints. Although Bible's body had been repeatedly stabbed, her clothing (a jacket, a purple bodysuit, and green corduroy pants) did not have any holes or tears.

"Orange County Sheriff's Department Criminalist Daniel Gammie collected trace evidence from Bible's body and clothing, including hair and fibers. During the autopsy, Gammie made an unusual finding; four of Bible's stab wounds had been stuffed with cotton, as was Bible's mouth and each of her nostrils. Gammie counted nine cotton balls in Bible's mouth. In the months and years following Bible's murder, the Garden Grove Police Department was unable to identify any suspects and the case turned cold.

"In November 1999, retired law enforcement Officer Robert Romaine started working on the Bible case in his capacity as a Master Reserve Officer assigned to the Detective Bureau of the Garden Grove Police Department's Cold Case Files. He submitted the forensic evidence Gammie had collected during Bible's autopsy to the Orange County Sheriff's Department for review and testing. Included in this packet of evidence was a single eyebrow or eyelash hair that had been recovered from one of Bible's socks. DNA testing established the hair found on Bible's sock could not have been hers. Further, the DNA profile of the hair sample would occur in less than one in one trillion individuals.

"Romaine also reviewed various police reports generated at the time of the crime in an effort to identify individuals to be interviewed or reinterviewed. During this part of the investigation, Romaine identified defendant as a person of interest or a potential suspect. In 2002, investigators contacted defendant at his home in Ohio, where he had been living for many years, and obtained buccal swabs from him for DNA testing.

3

Defendant's DNA profile matched the DNA profile of the hair found on Bible's sock.

"In late January 2003, the Garden Grove Police Department offered to fly defendant from Ohio to California at the department's expense for an interview. Defendant accepted the offer and came to California on January 31. On February 1, 2003, Garden Grove Detective Mark Hutchinson and Sergeant Ted Peaslee interviewed defendant at the Garden Grove Police Department. The interview was audio and video tape-recorded. The prosecution introduced a redacted version of the videotape and a typed transcript of the videotape at trial." (*Suknaich I*, *supra*, G035578.)

Defendant told the detectives varying versions of what happened during the victim's murder, tending to minimize his involvement. (*Suknaich I*, *supra*, G035578.)

"After a few minutes of the officers showing defendant photographs of people involved in the murder, they read him his *Miranda* rights. Hutchinson asked defendant to tell them the story one more time and defendant complied. In the final version, defendant said Steve [later identified as Ronald Lee] approached him with a potential drug deal. They got some money together to purchase an ounce of heroin. Steve purchased the heroin and arranged to have Bible make the exchange with the Hessians. Three days later, defendant stopped by Steve's house to ask what had happened to the deal. Steve said the hooker he had arranged to make the exchange ripped them off, but it was okay because he would take care of it. He told defendant he had arranged to have her come to his home. [(Brackets added.)]

"Defendant smoked cocaine and waited for Bible to arrive. When Bible got to the house, an argument started. She came into the bedroom where defendant was smoking cocaine and tried to exchange sex for drugs. Defendant was unable to perform, so he gave her some cocaine and she went into the kitchen. Defendant noticed that it got very quiet in the house and he surmised Steve and Bible were injecting heroin or

4

speedballs. Defendant came out of the bedroom and Steve said, 'Hey, that's the chick who ripped us off.'

"Steve, Alan [later identified as Adam Ballard], and defendant grabbed Bible. Defendant punched her in the back. Defendant and Steve told Bible to disrobe. Bible started to fight to get loose. Defendant bound Bible's hands behind her back. Steve put something in her mouth to stifle her screams. Defendant kicked her legs and Bible fell to the ground. As she fell, Bible kicked Steve in the groin. Steve jumped on and straddled Bible's torso. He stabbed her five times in the chest, threw the knife to the side and choked her. Defendant said everything happened too fast to stop Steve. Afterward, he felt Bible's neck for a pulse and listened for breathing, but she was dead. Defendant looked at Steve and said, 'I thought we were just gonna beat her ass and find out who's got our shit.' Steve replied, 'We ain't getting our shit back.' Defendant told the officers, 'That's when [Steve] told me that he believed that the Hessians had it, and that was way out of our league.' [(First brackets added.)]

"Steve told Alan to get some towels and start cleaning up. Steve, Alan, and defendant wiped clean Bible's body. Steve retrieved cotton gauze from the bathroom and stuffed the gauze into the stab wounds to keep them from leaking. Defendant could not remember if he inserted gauze in any other orifice. They finished dressing Bible's body and moved it to a clean part of the kitchen floor. Alan collected the soiled towels and put them in a large garbage bag. Defendant saw the knife on the kitchen floor, but did not see who disposed of it. Steve and Alan drove defendant to his sister's house to get a carpet cleaner. They returned to Steve's home and loaded Bible's body into the car. Steve and Alan drove away to dump Bible's body. Defendant cleaned the carpet and floors, returned the carpet cleaner to his sister's home, and went to his friend's apartment." (*Suknaich I*, *supra*, G035578.)

5

*Court Proceedings*

In 2005, defendant was tried for Bible's murder. The trial court instructed the jury on three theories of murder liability, including the natural and probable consequences theory, and an implied malice murder theory. (*Suknaich I*, *supra*, G035578.) The jury found defendant guilty of second degree murder. The trial court imposed a sentence of 15 years to life. This court affirmed the judgment on appeal. (*Ibid.*) In 2019, defendant filed a section 1170.95 petition to seeking vacate his murder conviction and be resentenced. The trial court dismissed the petition, finding the enabling legislation unconstitutional. This court reversed and remanded for further proceedings based on the merits of defendant's petition. (*People v. Suknaich* (Sept. 21, 2020, G057828 [nonpub. opn.].)

After issuing an order to show cause, and conducting an evidentiary hearing, the trial court denied defendant's section 1170.95 petition: "As an independent fact finder after reviewing and considering all the trial evidence and exhibits, this court finds that the prosecution has proved beyond a reasonable doubt that the petitioner is guilty of second degree implied malice murder under the amended sections 188 [implied malice], [and] 189 [degrees of murder]." (Brackets added.) The court concluded: "The totality of the defendant's actions and circumstances clearly demonstrate implied malice. So that is why the petition for re-sentencing will be denied."

Defendant filed a notice of appeal. Appointed counsel filed an opening brief with an attached declaration, averring: "I have thoroughly reviewed the record herein. A staff attorney at Appellate Defenders, Inc., has also reviewed the case. We have not identified any arguable issues." Defendant did not file a supplemental brief on his own behalf.

6

## II

## DISCUSSION

When appointed counsel is unable to identify any arguable issues on appeal, we independently review the entire record. (*Wende*, *supra*, 25 Cal.3d at pp. 441-442.) Generally, "an arguable issue on appeal consists of two elements. First, the issue must be one which, in counsel's professional opinion, is meritorious. That is not to say that the contention must necessarily achieve success. Rather, it must have a reasonable potential for success. Second, if successful, the issue must be such that, if resolved favorably to the appellant, the result will either be a reversal or a modification of the judgment." (*People v. Johnson* (1981) 123 Cal.App.3d 106, 109.)

Here, we have independently reviewed the record on appeal and agree with defendant's appointed appellate counsel that no arguable issues exist.

## III

## DISPOSITION

The trial court's order denying defendant's section 1170.95 petition is affirmed.

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

GOETHALS, J.

7