Filed 4/26/22  P. v. Chavez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>JOSE OSCAR CHAVEZ,<br><br>　　Defendant and Appellant. | G060584<br><br>(Super. Ct. No. 02NF2781)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Sheila F. Hanson, Judge.  Affirmed.

Laura Arnold, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*　　　　\*　　　　\*

In 2002, defendant Jose Oscar Chavez was the driver of a vehicle during a drive-by shooting. A jury convicted Chavez of murder and found true related firearm and gang allegations. The trial court imposed a sentence of 40 years to life.

In 2019, Chavez filed a petition seeking to vacate his murder conviction. (Pen. Code, § 1170.95.)[1] After a hearing, the trial court denied the petition, telling Chavez: "I do believe the People have proven beyond a reasonable doubt that you are liable for second degree murder based upon your own actions and implied malice."

Chavez filed an appeal. Counsel filed an opening brief identifying no arguable issues. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) Chavez filed a supplemental brief asking this court to dismiss and replace his appointed counsel.

We reviewed the record and found no arguable issues. Thus, we affirm the trial court's order. We also deny Chavez's request to dismiss and replace his counsel.


I

FACTS AND PROCEDURAL BACKGROUND

"At approximately 10:45 p.m. on August 28, 2002, Maria M[.], her cousins Leonardo R[.] and George R[.] were standing outside the home of Leonardo's wife on Garnet Street. They were looking at stereo speakers Leonardo had brought outside. As they were talking, Medina noticed a green truck drive by, followed by a car. The vehicles passed by a second time, driving more slowly, with their headlights turned off. The truck stopped, and Medina heard a shot, and saw Leonardo grab his chest. Leonardo died from the gunshot wound later that night.

"Immediately after Leonardo was shot, George got into his own vehicle and followed the truck, eventually obtaining a license plate number that he gave to the police. A records check showed the truck was registered to the father of Miguel Luna. Luna was

---

[1] Further undesignated statutory references are to the Penal Code.

known to the police as 'Big Boy' of the La Jolla gang. The police conducted surveillance, and observed Luna leave the trailer park. He was with three or four other individuals, and he made a hand motion simulating shooting with his fingers. One of the individuals, later identified as [Chavez], walked away from the group.

"Later that afternoon, Luna went behind his trailer, and emerged with what appeared to be a handgun wrapped in cloth. He then appeared between two trailers with nothing in his hands. Luna was detained at that point, and the officers recovered a handgun and some bullets under the crawl space of a vacant trailer." (*People v. Chavez* (Nov. 20, 2008, G038830) [nonpub. opn.], fn. omitted.)

Chavez "participated in an interview with police, eventually confirming that he had been driving the truck from which the shooting took place. He described being followed after the shooting. He told the officers that he did not know that Leonardo would be killed, but that [Chavez] thought the intent was to frighten him by shooting in the air. He knew the victim as 'Koyak' and agreed with the detective's suggestion that the shooting occurred because Leonardo had become a problem that needed to be dealt with." (*People v. Chavez, supra*, G038830.)

Chavez and four codefendants were charged with murder, related crimes, firearm and gang enhancements. "Luna testified for the prosecution at trial pursuant to a plea bargain. Pursuant to the plea, he admitted that he aided and abetted [Chavez] and codefendant Miguel Frias in Leonardo's murder. Luna further admitted that he was a member of the La Jolla gang and had been so for three or four years. His gang name was Big Boy. Luna testified that [Chavez] was not a member of the gang, but belonged to a 'party crew' called Los Compitas.

"Luna testified about the day of the shooting. Earlier in the day, he shot the gun that was later used in the shooting in [Chavez]'s presence, to show off to [Chavez] and gain more respect. Later, at [Chavez]'s home, Luna, [Chavez] and several others

3

were present. They were drinking. [Chavez] took the gun from under the seat of a Ford Explorer that belonged to Luna's father, where he had placed it earlier in the day. [Chavez] gave the gun to Frias, and the group started talking about 'payback,' specifically, a shooting, against 'rivals.' Luna stated that Frias had the idea of going to Placentia, where a rival gang called Plas was located, to do payback. The group took two cars, with Luna, Frias, and [Chavez] in the Ford Explorer. [Chavez] was driving.

"They drove to Garnet Street, with Frias holding the gun. He directed [Chavez] to circle the street and to turn off the lights. Frias stated that he wished to kill someone. [Chavez] stopped the car at Frias's direction, and Frias shot Leonardo. Luna testified that Leonardo claimed to be from Placentia gang, and that was a good enough reason kill him. He stated that Chavez followed instructions and did not object to anything." (*People v. Chavez*, *supra*, G038830.)

"At the conclusion of trial, the jury convicted [Chavez] of . . . murder and shooting from a motor vehicle. The jury also found the alleged enhancements to be true. [Chavez]'s subsequent motion to relieve his attorney was denied. He was sentenced to state prison for a total term of 40 years to life." (*People v. Chavez*, *supra*, G038830.)

*Section 1170.95 Petition*

In 2019, Chavez filed a section 1170.95 petition seeking to vacate his murder conviction.

In 2020, the trial court found "a prima facie showing that [Chavez] is entitled to relief." The court issued an order to show cause.

In 2021, the trial court conducted a three-day hearing. The prosecution introduced into evidence: the appellate record, the trial transcripts, and a video recording of Chavez's police interview from the earlier trial.

Chavez called as a witness his sister, who testified Chavez lived with his

4

family on the day of the murder. Chavez's sister said he was home all day (at least until 9:00 or 10:00 p.m.).

Chavez testified he was not with Luna earlier in the day (before the shooting that evening), and he did not see Luna fire a gun. Chavez said Luna, Frias, and other people came to his garage after 9:00 p.m., and drank beer. Chavez testified: "Mr. Frias indicated to us that Mr. Luna had a gun in the pickup truck, and he wanted to go and fire the gun in the air." Chavez said nobody discussed shooting the gun at a person and the word "pay back" was never used.

Chavez testified he offered to drive Luna's truck because he was the only one who was not drunk. Chavez said he did not see any gun while he was in the truck until Frias fired it. Chavez testified he stopped the truck because Frias told him to do so. Chavez said he turned off the headlights: "Because it was my understanding that it was the safe manner to drive so as not to disturb the cars that are coming from -- in the opposite direction."

At the conclusion of the evidentiary hearing, the trial court spoke to Chavez while announcing its ruling:

"I do believe the People have proven beyond a reasonable doubt that you are liable for second degree murder based upon your own actions and implied malice.

"When I look at the facts, I did find that you were driving the vehicle. That you had awareness that the gun was in the vehicle. That you were with Mr. Luna earlier that day where you observed him firing the weapon. That there was the conversation in the garage before you all went to the area of the murder in which the firearm was present. You removed it from the vehicle and provided it to Mr. Frias.

"I find credible Mr. Luna's testimony that he had bragged to you in the past not only of engaging in fights, tagging, but a shooting, and there was discussion about payback before you all headed to that area.

5

"Your actions in driving by the location, driving slowly, stopping, turning off your headlights, your admission that you were driving, knew the gun was in the vehicle, and you admitted to moving the vehicle, leads me to believe that the people have, in fact, proven beyond a reasonable doubt that you acted with implied malice.

"Accordingly, Mr. Chavez, your petition for resentencing is denied. I wish you luck."

*The Instant Appeal*

In August 2021, Chavez filed a notice of appeal from the trial court's denial of his section 1170.95 petition.

In October 2021, appointed appellate counsel filed a motion to augment the record on appeal, which was later granted by this court.

In January 2022, appellate counsel filed an opening brief identifying no arguable issues. Counsel wrote a letter to Chavez stating counsel had filed "what is commonly referred to as a 'No-Issue' or *Wende* brief." Counsel told Chavez he could file a supplemental brief "if you feel there are legal arguments that should be made." Counsel enclosed "the clerk's transcript and reporter's transcript on appeal, so you can use them to write a supplemental brief." Counsel further said: "You may also ask the court to remove me as your attorney. To do this, you need to write to the court and explain why you want me removed. I am advising you of this right because you need to be informed of your rights, *not* because I want to be removed."

In March 2022, Chavez filed a supplemental brief, which included the letter his appointed counsel had sent to him (we are directing the clerk's office to make a copy of counsel's letter and return the original to Chavez). The supplemental brief will be covered in greater detail in the discussion section of this opinion.

6

II

DISCUSSION

In the interests of justice, an appellate court may conduct a *Wende* review when a defendant files an appeal from a trial court's denial of a section 1170.95 petition. (*People v. Flores* (2020) 54 Cal.App.5th 266, 269.)

When defendant's counsel identifies no arguable issues on appeal, an appellate court independently reviews the record for arguable issues. (*Wende*, *supra*, 25 Cal.3d at pp. 441-442.) Generally, "an arguable issue on appeal consists of two elements. First, the issue must be one which, in counsel's professional opinion, is meritorious. That is not to say that the contention must necessarily achieve success. Rather, it must have a reasonable potential for success. Second, if successful, the issue must be such that, if resolved favorably to the appellant, the result will either be a reversal or a modification of the judgment." (*People v. Johnson* (1981) 123 Cal.App.3d 106, 109.)

In a *Wende* review, the defendant has the right to file a supplemental brief. (*Wende*, *supra*, 25 Cal.3d at p. 440.) If a defendant files a supplemental brief, the "opinion must reflect the contentions and the reasons that they fail." (*People v. Kelly* (2006) 40 Cal.4th 106, 120.) However, a "decision does not require an extended discussion of legal principles. [Citations.] Moreover, a recitation of each of the defendant's assertions will not be necessary in all cases; the purposes of the constitutional requirement [for a written decision] may in some circumstances be satisfied by a summary description of the contentions made and the reasons they fail." (*Id.* at p. 121.)

Under section 1170.95, in an evidentiary "hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended . . . ." (§ 1170.95, subd. (d)(3).) "Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).)

7

"For purposes of Section 187, malice may be express or implied." (§ 188, subd. (a).)

Here, Chavez filed a section 1170.95 petition. The trial court found Chavez established a prima facie basis for relief, issued an order to show cause, and conducted an evidentiary hearing. At the conclusion of the hearing, the court found the prosecution had proven beyond a reasonable doubt Chavez is guilty of murder under current law based on his own actions and mental state (implied malice). (See §§ 187, 188.)

Chavez's counsel filed a *Wende* brief identifying no arguable issues. This court independently reviewed the record, to include the reporter's transcripts from the original trial. We similarly found no arguable issues. Thus, we affirm the order of the trial court, which denied Chavez's section 1170.95 petition for relief.

Chavez later filed a supplemental brief, which also identifies no arguable issues. However, Chavez respectfully asks this court to dismiss and replace his appointed appellate counsel, stating various contentions.

"A defendant seeking to discharge appointed counsel and substitute another attorney must establish either that appointed counsel is not providing adequate representation or 'that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.'" (*People v. Mayfield* (1997) 14 Cal.4th 668, 795, abrogated on another point of law as stated in *People v. Scott* (2015) 61 Cal.4th 363, 390, fn. 2.)

Chavez's primary contention is counsel filed a *Wende* brief without first informing him of what counsel was planning to do. While we understand Chavez's concern, appellate counsel's procedure in this regard is not unusual or harmful to his interests, and therefore we do not find inadequate representation.

In this case—as in virtually every *Wende* brief this court has ever encountered—counsel filed a declaration with the opening brief. Counsel averred under penalty of perjury: "I have thoroughly reviewed the record in this case. An attorney at

Appellate Defender's, Inc., has also reviewed this case."

Although Chavez would have preferred to have known that his appointed counsel was planning on filing a *Wende* brief before the document was filed, we think Chavez's interests were well protected by having the record reviewed by two attorneys acting on his behalf. Further, we presume there may have been some logistical challenges if counsel would have first provided the appellate record to Chavez, and then attempted to get feedback from him, prior to filing a timely opening brief. Moreover, the *Wende* review process itself protects Chavez's interests by allowing him to file a supplemental brief *after* counsel has filed a *Wende* brief.

Chavez also contends his appointed counsel did not repeat the same arguments raised by his trial counsel (in the superior court). But again, this is not unusual, and it does not establish ineffective representation. Generally, it is the role of a defendant's counsel in an appellate court to review the trial court record and to spot any potential errors that may have affected the outcome of the proceeding. That is precisely what appointed counsel did in this case. If an appellate counsel were to simply repeat the same arguments that were made by trial counsel, that would generally not be an effective approach or strategy on appeal.

Finally, Chavez contends that his appointed counsel apparently wrote the wrong booking number and address on the letter that she sent to him (advising him of the filing of the *Wende* brief). While this clerical error is regrettable, we can assure Chavez it had no negative effect on his appeal. Again, we conducted our own independent review of the entire record, and we similarly identified no arguable issues.

9

III

DISPOSITION

The trial court's order denying Chavez's section 1170.95 petition is affirmed. Chavez's request to dismiss and replace his counsel on appeal is denied.


MOORE, ACTING P. J.

WE CONCUR:


GOETHALS, J.


ZELON, J.*


*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.