Filed 1/11/23  P. v. Payne CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

     Plaintiff and Respondent,

v.

JAMARCUS SEAN PAYNE,

     Defendant and Appellant.

E079177

(Super. Ct. No. INF2101095)

OPINION

APPEAL from the Superior Court of Riverside County.  Timothy F. Freer, Judge.

Affirmed.

Laura Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

I.

INTRODUCTION

Defendant and appellant Jamarcus Sean Payne appeals after a jury convicted him of misdemeanor spousal battery (Pen. Code, § 243, subd. (e)(1)), a lesser included

1

offense of willfully inflicting corporal injury resulting in a traumatic condition upon a spouse, cohabitant, fiancée, girlfriend, or child's parent as charged in count 1 of the information, and felony vandalism (Pen. Code, § 594, subd. (a); count 2). Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, requesting this court to conduct an independent review of the record. In addition, defendant has had an opportunity to file a supplemental brief with this court and has not done so. Based on our independent review of the record, we find no error and affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant and the victim, Jane Doe, had been in an "on and off" romantic relationship for over 10 years. They had two children together, who were the ages of two and 11 at the time of the incident. Jane also has another child, who was seven years old, from another relationship.

On July 6, 2021, defendant and Jane lived together in a two bedroom apartment with their two children, Jane's other child, and Jane's two nephews ages three and four. That morning, defendant was preparing for a job interview while Jane prepared breakfast for the children and spoke on the phone with her best friend, Jennifer. While Jane was on the phone with Jennifer for about an hour, defendant asked Jane for her help in getting the wrinkles out from his clothes. Not having an iron in the apartment, Jane decided to boil a pot of water to release the wrinkles from defendant's clothes via steam.

2

Believing Jane should be doing more to help him, defendant became frustrated with Jane as she remained on the phone with her friend. An argument soon ensued with defendant and Jane calling each other derogatory names. While throwing his clothes off the balcony of their second story apartment, Jane eventually ordered defendant out of the home. The argument escalated into a physical altercation. Defendant pushed Jane one or two times, causing her to fall. Defendant then repeatedly punched Jane in the face and upper body until their 11-year-old son told defendant to stop. When Jane informed defendant that she was going to call the police, defendant asked her not to since he would go to jail. Jane told defendant that she was calling the police because he had hit her and called 911.[1] Defendant left the apartment.

As a result of the physical altercation, Jane had cuts to her lip and a bruise on her forehead that developed into a "bump." Palm Springs Police Officer Baron Lane, who was dispatched to Jane's apartment on the day of the incident, observed a one-inch-diameter swelling in the middle of Jane's forehead, and in the middle of the swelling he saw two eighth-inch lacerations. Officer Lane also saw a quarter inch laceration to Jane's upper lip. Jane estimated on a scale of one to 10, her pain level was at a seven.

At around 10:54 a.m., Officer Lane responded to a call of a "suspicious man trespassing." Officer Lane contacted defendant, who was sitting near the back of a residence about a quarter mile from his and Jane's apartment, and identified him as the

---

[1] Jane's 911 call was recorded and played for the jury at the time of trial.

3

suspect in the alleged domestic violence incident with Jane earlier that morning.[2] Defendant told Officer Lane that he believed people may have called the police since he was jumping through their backyards while being chased.

The prosecution also introduced evidence of a recorded jail call between defendant and Jane, which was recorded the night before Jane's testimony. The recorded call indicated defendant asked Jane to testify that she had started the incident when she pushed defendant. Defendant also asked Jane to testify that the police were "extra in the report." Jane agreed. Defendant also reminded Jane, "no hands, just shoved, ok?" Jane again agreed. Defendant told Jane, "I love you so much, and I'll make this up to you I'll do whatever I gotta do, I'll take care of the kids, I'll let you have vacation time, whatever." When confronted with the jail phone call at trial, Jane testified she told the jury the truth, and although she felt pressure from defendant, "[she] was not going to come into court and lie."

A maintenance worker for Palm Springs Desert Regional Medical Center was present on July 6, 2021, when defendant was at the facility. As part of his employment, the worker was asked to assess the damage defendant had caused to a room. The worker estimated the following costs to repair the damage: $210-280 in labor based on six to eight hours of work at $35 per hour for one person (two people worked on the repairs), $150 to $200 to fix a light, $50 for a new safety glass, and $200 to $600 for a new IV

---

[2] The contact was recorded in Officer Lane's Body Worn Camera and played for the jury at the time of trial.

pole that attaches to a gurney. The worker admitted he could not provide an exact dollar amount, but estimated the total amount of damages to be in the thousands since the room had to be shut down for a few days to make the repairs.

Defendant testified that because he was upset that he had spent the morning getting ready for his interview and taking care of the kids while Jane remained on the phone with her friend and not helping him, defendant called Jane a "'lazy bitch.'" Jane responded "with some verbal words," and defendant called her "lame." While on the phone with her friend, Jane continued to yell at him. Defendant claimed that Jane antagonized him, calling him names, and in turn, he called Jane names. Defendant used a safety word, which signaled to the other that they needed to be left alone for five minutes to avoid escalating fights. After defendant told Jane the safety word, Jane replied, "'Fuck that. Fuck whatever it is. Get the fuck out. I'm calling the police. I'm calling the police, you little bitch' . . . ." As defendant attempted to leave, Jane yelled, "'This is what you do. This is what you do. I'm calling the police. I'm calling the police. You're going to jail. You're going to go to jail.'" After saying goodbye to the baby, defendant left wearing no shirt or shoes. Jane began to throw his clothes out the door in front of the neighbors, while calling him names and telling him to "'get the fuck out.'" On the way back to the apartment, he stopped at a grocery store where he ran into a neighbor. The neighbor told him not to go back to the house because Jane had called the cops, and the cops were "everywhere." As he was going back to the apartment, three people carrying objects came running after him and tried to attack him, but he took off running. He ran to

a nearby house where the resident called the police. He waited at the house until police arrived.

Defendant denied hitting Jane, but admitted getting angry at her because she was being inconsiderate by not helping him prepare for the interview. He admitted that he could have been "nicer" with his words and believed Jane's medication caused her to become emotional and may have contributed to her escalating the incident. He denied that he was telling Jane to lie in the jail call with Jane. He also denied hitting Jane with his fist and causing Jane's injuries. He claimed that he did not know how Jane had sustained her injuries. Defendant admitted destroying property at Desert Regional Medical Center as he was upset about everything happening.

On April 14, 2022, the jury convicted defendant of misdemeanor domestic violence battery (Pen. Code, §243, subd. (e)(1)), the lesser included offense of inflicting corporal injury causing traumatic injury as alleged in count 1 of the information, and felony vandalism (count 2). The jury found the victim was not a "vulnerable victim" within the meaning of California Rules of Court, rule 4.421(a)(3), as alleged in count 1. Defendant admitted that he had suffered a prior strike conviction (Pen. Code, §§ 667, subd. (d), 1170.12, subd. (b)).

On June 10, 2022, the trial court sentenced defendant to a total term of four years in state prison with 677 days credit for time served. The court ordered defendant to pay a $300 restitution fine (Pen. Code, § 1202.4, subd. (b)), and a $300 parole restitution fine stayed pending successful completion of parole (Pen. Code, § 1202.45). The court struck

6

the criminal operations assessment (Pen. Code, § 1465.8, subd. (a)(1)) and criminal conviction fees (Gov. Code, § 70373). Defendant timely appealed.

III.

DISCUSSION

After defendant appealed, upon his request, this court appointed counsel to represent him. Upon examination of the record, counsel has filed a brief under the authority of *People v. Wende*, *supra*, 25 Cal.3d 436 and *Anders v. California*, *supra*, 386 U.S. 738, setting forth a statement of the case, a summary of the facts and potential arguable issue, and requesting this court conduct an independent review of the record.

We offered defendant an opportunity to file a personal supplemental brief, and he has not done so.

An appellate court conducts a review of the entire record to determine whether the record reveals any issues which, if resolved favorably to defendant, would result in reversal or modification of the judgment. (*People v. Wende*, *supra*, 25 Cal.3d at pp. 441-442; *People v. Feggans* (1967) 67 Cal.2d 444, 447-448; *Anders v. California*, *supra*, 386 U.S. at p. 744; see *People v. Johnson* (1981) 123 Cal.App.3d 106, 109-112.)

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the entire record for potential error and find no arguable error that would result in a disposition more favorable to defendant.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

McKINSTER

Acting P. J.

SLOUGH

J.