Filed 4/12/23  P. v. Sidhu CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MANPREET SINGH SIDHU,<br><br>    Defendant and Appellant. | F083564<br><br>(Super. Ct. No. BF172396B)<br><br>**OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Kern County.  Michael G. Bush, Colette M Humphrey, Michael E. Dellostritto, David R. Zulfa, and Charles R. Brehmer, Judges.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]Before Peña, Acting P. J., Smith, J. and De Santos, J.

Manpreet Singh Sidhu (defendant) appeals from a judgment of conviction on counts of first degree murder and conspiracy to commit murder. His appointed appellate counsel makes no claims of error and asks this court to independently review the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). Defendant has been advised of his right to make supplemental contentions and he has filed a letter. We detect no arguable issues and therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On the morning of January 16, 2018, a California Highway Patrol officer was patrolling State Route 65 near James Road on the outskirts north of Bakersfield. Shortly before 7:00 a.m., the officer initiated a traffic stop of a white GMC Yukon traveling southbound at 74 mph in a 55 mph zone. A portion of the vehicle had been spray-painted black, and it had a paper "dealer plate" advertising the name of an automotive business.

The driver of the Yukon was Adam Barness, a resident of Los Angeles County. He was accompanied by defendant, who occupied a rear passenger seat. There was a third person in the front passenger seat.

Barness claimed to have left his wallet at home and was unable to produce any documentation for the vehicle. The officer asked, "Where are you guys coming from?" Barness replied, "Los Angeles." When the officer pointed out the inconsistency in their direction of travel, Barness and defendant made statements indicating that they had recently turned around in search of a gas station.

The officer located the vehicle identification number (VIN) and returned to his patrol car to perform a VIN check. He discovered the GMC Yukon had been reported stolen in Los Angeles approximately five weeks earlier. Following the arrival of backup officers, Barness and defendant were ordered out of the vehicle and arrested. The man in the front passenger seat (the victim) failed to respond to verbal commands.

The officers soon realized the victim was dead. A Mobile Video/Audio Recording System (MVARS) recorded one officer commenting that rigor mortis had already set in.

2.

The victim's right arm was noted to be positioned "under the lap portion" of the seat belt, which the officers interpreted to mean "he didn't sit himself in the seat."

Barness and defendant were taken into custody by the sheriff's depaerment. The GMC Yukon was seized and searched. Investigators found multiple firearms, a shovel, a can of gasoline, three cans of spray paint, methamphetamine and smoking paraphernalia, a black ski mask, and a "fingerless glove." Inside the rear seat pocket of the driver's seat was a matching glove and a braided metal wire. Several of these items were swabbed for deoxyribonucleic acid (DNA) testing.

Barness invoked his right to remain silent, but he complied with a search warrant for his DNA. Defendant waived his rights and claimed ignorance of any wrongdoing apart from Barness's speed violation. He described Barness as a casual acquaintance known to him as "Beto" or "Guero" whom he had met a few months earlier through a man he called "Gatto."

According to defendant's initial story, Barness picked him up from a certain 7-Eleven convenience store in South Los Angeles sometime between 3:00 a.m. and 4:00 a.m. on the day of their arrest. There were vague allegations of a prearranged plan for Barness to give defendant a ride to defendant's parents' home in Bakersfield. Defendant had seen Barness drive the GMC Yukon on prior occasions, and he was under the impression Barness was a "rich guy" who owned multiple cars.

Defendant denied knowing the victim. He claimed the victim was already in the front passenger seat of the Yukon when Barness arrived at the 7-Eleven. Barness said that his "buddy" was sleeping, and defendant had paid no further attention to the man.

At the end of the interview, defendant advised that his DNA would likely be found on the metal wire discovered inside of the Yukon. He explained that the item was "on the seat" when he first entered the vehicle, and he had touched it. Subsequently, on a date not specified in the record, detectives obtained store surveillance footage from the time of defendant's alleged meet-up with Barness at the 7-Eleven. The video reportedly showed

defendant getting into the driver's seat of a Nissan sport utility vehicle and driving out of the parking lot.

On January 18, 2018, an autopsy was performed on the victim. A homicide detective from the Kern County Sheriff's Office attended the examination. The victim was noted to have abrasions on his face and the inside of his lip. There was an apparent ligature mark across his neck. The cause of death was determined to be ligature strangulation.

The detective showed the medical examiner a photograph of the metal wire found inside of the GMC Yukon. The medical examiner opined that the victim's injuries could have been caused by the wire. At the detective's request, swab samples were taken from the victim's face and neck for DNA testing.

According to a criminalist involved in the DNA testing, the Kern Regional Crime Lab reported the test results sometime "around March of 2018." Barness's DNA was matched to swab samples taken from the victim's face. The victim's DNA was found on the middle portion of the metal wire and exterior portions of the gloves seized from inside the GMC Yukon. Defendant's DNA was found on the ends of the metal wire, as well as on interior and exterior portions of the gloves.

On May 29, 2018, a criminal complaint was filed charging defendant and "Ben Barness" (the alias Barness had used at the time of his arrest) with murder (Pen. Code, § 187) and conspiracy to commit murder (*id*., §§ 182, subd. (a)(1), 187) in connection with the victim's death. The complaint was amended a few days later to charge Barness by his true name. In June 2018, defendant agreed to a second interview with detectives.

Defendant admitted to having previously met the victim while accompanying Barness on a drug-related errand. The victim had allegedly owed money to the man defendant called "Gatto," and Barness had collected the money on Gatto's behalf. Defendant provided details about a residence occupied by a female, which was consistent

4.

with the victim's living arrangements. One of the detectives said, "You just described his house to us." It was unclear from defendant's story when the prior incident had occurred.

Defendant had previously described Gatto as an "Indian guy" who was both a friend and neighbor. In his second interview, he again called Gatto his "friend" but also alleged Gatto was a member of the "Florence gang" who sold illegal narcotics and had a tattoo of the letter F on his face. Defendant maintained Barness was a mere acquaintance with whom he occasionally got high. Barness was portrayed as a "rich guy" with an affinity for cars, guns, and recreational drugs.

Unaware detectives had already viewed the 7-Eleven surveillance footage, defendant continued to allege he met up with Barness at the store on the day of their arrest. As before, he denied knowing how or when the victim had died. This time, however, he also denied having ever touched the metal wire.

A preliminary hearing commenced in February 2019, but only two witnesses testified before the parties agreed to continue the proceedings. The hearing resumed in June 2019, at which time the People introduced evidence Barness and the victim had worked together at Cedars-Sinai hospital in Los Angeles. The victim had a life insurance policy through his employer, and he had named Barness as the beneficiary in May 2017.

In July 2019, defendant and Barness were charged by information with premeditated murder (count 1) and conspiracy to commit murder (count 2). Barness, who faced additional charges, later moved under Penal Code section 995 to set aside the information for lack of probable cause. Defendant summarily joined in the motion with regard to counts 1 and 2. In November 2019, the motion was denied.

On July 1, 2020, a hearing was held pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). Defendant's legal counsel had been replaced a week earlier due to an asserted conflict, and defendant was now expressing concerns about the competency of his newly appointed counsel. The hearing ended with defendant admitting his concerns were based on unfounded rumors the attorney had been disbarred.

In March 2021, defendant's appointed counsel was permitted to withdraw because of an asserted conflict. In May 2021, the third attorney appointed to represent defendant was permitted to withdraw due to an alleged conflict. In July and August 2021, additional *Marsden* hearings were conducted regarding the fourth attorney appointed to represent defendant. The *Marsden* motions were denied.

Beginning August 31, 2021, and continuing through September 24, 2021, defendant and Barness were jointly tried before a single jury. On the second day of trial, the People filed an amended information to allege overt acts in connection with the conspiracy charge. The amended portion of count 2 alleged as follows:

> "Overt Act #1: The defendants met on January 15, 2018–January 16, 2018, in Los Angeles County, California. Overt Act #2: One [or] both of the defendants picked up [the victim]. Overt Act #3: One [or] both of the defendants killed [the victim] while [the victim] was inside the GMC Yukon. Overt Act #4: The defendants traveled to Kern County, California, to dispose of [the victim's] body. Overt Act #5: The defendants tried to hide the fact [the victim] was dead [from the CHP officer who made the traffic stop]." (Some capitalization omitted.)

As reflected in the prosecutor's opening statement, the People theorized defendant and Barness killed the victim with the expectation Barness would receive $50,000 in life insurance proceeds and defendant would be paid a share of the money for his assistance. This underdeveloped theory generally ignored the practical difficulties of collecting on the policy in the event all evidence of the insured's death had been burned and/or buried in a remote location. The prosecutor's closing arguments theorized Barness and defendant were "very active participant[s]" in a "drug ring" that operated out of Los Angeles. Defendant was portrayed as Barness's "lackey."

Trial counsel for Barness argued defendant acted alone in killing the victim. The attorney proposed a scenario in which defendant had suddenly and unexpectedly strangled the victim from behind approximately "20 minutes before the car was pulled over." It was suggested defendant may have experienced temporary psychosis from the

6.

effects of methamphetamine. But this theory did not explain why the victim was found with his right arm belted underneath the lap portion of his seat belt.

Defendant took the stand and blamed everything on Barness. His testimony began with a convoluted story about being victimized in an extortion scheme carried out by Barness and "Gatto." When he initially refused to comply with their demands, Barness beat him with a baseball bat. Defendant was then forced, under threat of additional physical harm, to serve as an illegal narcotics courier. In this version of events, Barness was a high-ranking gang member and Gatto was his "right-hand man."

Defendant testified that Barness contacted him on January 16, 2018, at around 4:00 a.m., with instructions to meet him at a house in Burbank. Defendant first went to the 7-Eleven where he worked in search of a ride. Unable to find someone to help him (he did not want to illegally drive without a license), defendant drove himself to Burbank in a Nissan Xterra—a vehicle Barness had previously given to him for the purpose of transporting narcotics. Defendant arrived at the meeting place to find Barness, Gatto, and the victim in a cul-de-sac area. The victim, who appeared to be in a drug-induced stupor, was already seated inside of the GMC Yukon.

According to the testimony, Barness and Gatto led defendant to a Ford Expedition parked nearby and essentially tricked him into handling the gloves and metal wire that were used to kill the victim. Barness ordered defendant to strangle the victim, but defendant refused. Barness eventually strangled the victim himself and subsequently forced defendant to accompany him on the drive to Kern County, where Barness planned to dispose of the body.

The jury found both men guilty as charged. For the crime of first degree murder, defendant was sentenced to a prison term of 25 years to life. The same sentence was imposed for the conspiracy conviction but stayed pursuant to Penal Code section 654. A timely notice of appeal was filed in November 2021.

In June 2022, defendant's appointed counsel filed an opening brief pursuant to *Wende*, *supra*, 25 Cal.3d 436, requesting independent review of the appellate record for arguable issues. Counsel attested to having given the required notice to defendant, providing a copy of the *Wende* brief, and informing defendant he had 30 days to submit his own supplemental brief. (See *People v. Kelly* (2006) 40 Cal.4th 106, 124.) On or about June 22, 2022, this court provided separate notice to defendant of his right to file a supplemental brief.

In a handwritten letter dated July 12, 2022, defendant alleges he "can't open or close" his left hand due to arthritis that was diagnosed at Kern Medical Center sometime "around 04/01/2021." Defendant claims to have provided "those Medical Reports [to his] trail [*sic*] attorney" and implies the attorney never acted upon the information. The letter concludes with a request for this court to "check [his] files at Kern Medical Center hospital." Apart from this correspondence, no additional briefing has been filed.

## DISCUSSION

"[T]he constitutional right to assistance of counsel entitles an indigent defendant to independent review by the Court of Appeal when counsel is unable to identify any arguable issue on appeal. California's procedure for securing this right requires counsel to file a brief summarizing the proceedings and the facts with citations to the record, and requires the appellate court to review the entire record to determine whether there is any arguable issue." (*People v. Kelly*, *supra*, 40 Cal.4th at p. 119.)

"[A]n arguable issue on appeal consists of two elements. First, the issue must be one which, in counsel's professional opinion, is meritorious. That is not to say that the contention must necessarily achieve success. Rather, it must have a reasonable potential for success. Second, if successful, the issue must be such that, if resolved favorably to the appellant, the result will either be a reversal or a modification of the judgment." (*People v. Johnson* (1981) 123 Cal.App.3d 106, 109; see *People v. Garcia* (2018) 24 Cal.App.5th 314, 325 [describing an arguable issue "as one that is not frivolous"].)

8.

We have independently reviewed the record on appeal, including the *Marsden* transcripts, and are satisfied no arguable issues exist. Defendant's alleged arthritis condition is not mentioned in any part of the record, so there is no basis for a related claim of ineffective assistance of counsel on direct appeal. Appellate counsel has fulfilled her obligations under *Wende*.

## DISPOSITION

The judgment is affirmed.