Filed 8/17/23  P. v. Robinson CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E081123 |
| v. | (Super.Ct.No. RIF2202443) |
| MAURICE ROBINSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge.

Affirmed.

Arthur Martin, under appointment by the Court of Appeal, for Defendant and

Appellant.

No appearance for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

Pursuant to a negotiated disposition, defendant and appellant Maurice Robinson pleaded guilty to dissuading a witness by force or fear (Pen. Code,[1] § 136.1, subds. (b) &(c)) and misdemeanor battery (§ 243, subd. (e)(1)). He also admitted that he had suffered a prior strike conviction (§§ 667, subds. (c) & (e)(1) & 1170.12, subd. (c)(1)). In exchange, the remaining charges and enhancement allegation were dismissed, and defendant was sentenced to a stipulated term of 32 months in prison with credit of 340 days for time served. Defendant appeals from an order after judgment. Based on our independent review of the record, we find no error and affirm the judgment.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Jane Doe (C.S.) and defendant were in a dating relationship for about two months. In February 2022, they were in the process of breaking up. During this time, defendant unexpectedly appeared at C.S.'s home at around 1:00 a.m. and banged on the front door of C.S.'s home. C.S. opened the door and allowed him to come inside as he told her that he was there to get his remaining belongings. When C.S. told defendant that she no longer wanted to be with him, defendant slapped C.S. on her face with an open hand. Defendant then grabbed her cellphone as C.S. was in the process of calling 911 and threw

---

[1] All future statutory references are to the Penal Code.

[2] The factual background is taken from the preliminary hearing transcript.

it against the wall, causing it to break. He also retrieved C.S.'s car keys and took the battery out. After he got his mail, he left. Before he left, defendant threatened to kill C.S. if she contacted the police, causing her to be scared. Defendant also threatened to kill her if he saw her with another man.

When C.S. went to her car so she could go to her mother's home, she noticed that all four tires on her car had been slashed, the hood of her car had been keyed, and the side view mirrors had been knocked off. C.S. paid around $230 to replace all four tires and approximately $1,000 to fix the keyed marks on her car. She had not replaced her side view mirrors and did not get an estimate to replace them.

Following the incident, C.S. moved out of her apartment and moved in with her mother. About two weeks after the incident, defendant showed up at C.S.'s mother's house and again slashed all four tires of C.S.'s vehicle.

Following a preliminary hearing, an information was filed charging defendant with felony dissuading a witness by force or fear (§ 136.1, subds. (b) & (c)(1); count 1); misdemeanor domestic battery (§ 243, subd. (e)(1); count 2); felony vandalism causing damage greater than $400 (§ 594, subds. (a) & (b)(1); count 3); and misdemeanor vandalism causing damage less than $400 (§ 594, subd. (a); count 4). The information also alleged defendant suffered a 2004 manslaughter conviction that qualified as a prior serious felony (§ 667, subd. (a)) and a prior strike (§§ 667, subd. (c) & (e), 1170.12, subd. (c)).

3

On February 27, 2023, pursuant to a negotiated disposition, defendant pleaded guilty to counts 1 and 2 and admitted the prior strike conviction. In return, defendant was promised the remaining allegations would be dismissed, and he would be sentenced to a stipulated term of 32 months in prison with 340 days' credit for time served.

Prior to pleading guilty, defendant executed a felony plea form. The trial court went over the plea form with defendant. In response to the trial court's query, defendant indicated that he had gone over the plea form with his attorney and that he understood his constitutional rights, the consequences of the plea, and the plea agreement. Defendant acknowledged he had initialed and signed the plea form and indicated he had no questions for the court. Defendant's counsel joined in the plea and indicated the plea was voluntary. After directly examining defendant, the court found that defendant knowingly, intelligently, freely, and voluntarily waived his rights and that he understood the charges against him and the possible consequences of his plea.

The following day, defendant was sentenced in accordance with his plea agreement to 32 months (the low term of 16 months doubled) in prison with 340 days' credit for time served, and the remaining allegations were dismissed. Defendant was ordered to pay a restitution fine in the amount of $300 (§1202.4, subd. (b)) and a $300 parole revocation fine (§ 1202.45, subd. (c)). Defendant was also ordered to pay an $80 court operations assessment and a $60 criminal conviction fee. At defense counsel's request, the court ordered the probation department to determine the amount of victim restitution.

Defendant timely filed a notice of appeal and a request for certificate of probable cause. In his request for certificate of probable cause, defendant questioned why he was given an additional 16 months for a crime he had committed about 20 years ago and had already served time for. The trial court denied defendant's request for a certificate of probable cause.

## III.

## DISCUSSION

After defendant appealed, upon his request, this court appointed counsel to represent him. Upon examination of the record, counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the case, a summary of the facts and potential arguable issues, and requesting this court to conduct an independent review of the record. Counsel identifies the possible issues of whether defendant was sentenced in accordance with his plea agreement and whether the trial court erred in not granting defendant's request for a certificate of probable cause.

We offered defendant an opportunity to file a personal supplemental brief, but he has not done so.

An appellate court conducts a review of the entire record to determine whether the record reveals any issues which, if resolved favorably to defendant, would result in reversal or modification of the judgment. (*People v. Wende*, *supra*, 25 Cal.3d at pp. 441-

5

442; *People v. Feggans* (1967) 67 Cal.2d 444, 447-448; *Anders v. California*, *supra*, 386 U.S. at p. 744; see *People v. Johnson* (1981) 123 Cal.App.3d 106, 109-112.)

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the entire record for potential error and find no arguable error that would result in a disposition more favorable to defendant.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

McKINSTER
Acting P. J.

MILLER
J.