Filed 1/22/25  P. v. Garza CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E084260 |
| v. | (Super.Ct.No. SWF2400474) |
| EDDIE NEAL GARZA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Louis R. Hanoian, Judge.

Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

# I.

## INTRODUCTION

A jury found defendant and appellant Eddie Neal Garza guilty of willfully and unlawfully attempting to evade a police officer (Veh. Code, § 2800.4; count 1); evading police with willful and wanton disregard for public safety (Veh. Code, § 2800.2; count 2); unlawfully taking or driving a vehicle without owner's consent with a prior vehicle theft conviction (Veh. Code, § 10851, subd. (a); Pen. Code, § 666.5, subd. (a); count 3); grand theft vehicle with a prior vehicle theft conviction (Pen. Code, §§ 496, subd. (a), 666.5, subd. (a); count 4); misdemeanor possession of burglar tools (Pen. Code, § 466; count 5); and possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a); count 6). Defendant stipulated to the prior vehicle theft convictions alleged in counts 2 and 3. The trial court found that defendant had suffered at least eight prior felony convictions. Defendant was sentenced to a total aggregate term of three years, eight months with 236 days credit for time served. Defendant appeals from an order after judgment. Based on our independent review of the record, we find no error and affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 13, 2024, a white Ford F-250 pickup truck was stolen from CVAC Systems, Incorporated in Riverside County. The theft was discovered by James Chapman, the primary driver of the truck.

2

On March 14, 2024, at 11:00 a.m., Murrieta Police Department Officer Peter Larsen received a "Flock" notification on his phone indicating a stolen white Ford F-250 had been detected by a traffic camera. The officer located the vehicle in a parking lot. Once the officer confirmed the truck was stolen, the officer called for backup. After the vehicle pulled into a parking spot, Officer Larsen stopped behind the truck, got off his motorcycle, pulled his firearm, and told the occupants to "turn the vehicle off and put your hands out the window." The occupants were a male and female.

The occupants did not get out as directed. Instead, the vehicle sped away at a high rate of speed. Officer Larsen activated his lights and sirens and gave pursuit. The truck exited to Los Alamos Road, crossed the paved center median and drove in the wrong direction. The truck weaved between stopped vehicles at a high rate of speed. It eventually entered Interstate 215 North by using an exit ramp and traveled in the wrong direction on the shoulder. Officer Larsen did not follow the truck onto the freeway. Officer Larsen lost sight of the truck around Murrieta Hot Springs and broadcasted a description of the truck and the direction it was traveling.

The truck eventually collided with a concrete culvert. Officer Fawsi Murra responded to the accident. She recovered a gray backpack from behind the driver's seat. The backpack contained California identification cards belonging to defendant Eddie Neal Garza and Sally Franco. There was a letter from the Utah State Tax Commission addressed to defendant and two citations, one written to defendant and one to Franco.[1]

---

[1] The backpack was entered into safekeeping but it was later destroyed by the police department, as well as the contents of the backpack.

There was also a black bag with a passport inside found in the truck. Officers swabbed several parts of the truck for DNA. No results were admitted into evidence.

Officer Garrett James found defendant and the female walking in the area of Ranch House and Graystone, in the direction of the area where the suspects had fled to. Not many people walk in that area at around 11 a.m. Defendant's shoes had dirt on them consistent with the area in which the truck crashed. After arresting defendant, Officer James found a shaved key in defendant's wallet. Shaved keys are commonly used to steal older model vehicles. Methamphetamine was also found on defendant's person. Officers identified defendant as the person who may have been involved in the vehicle theft. The female with defendant was later identified as April Groves.

An amended information charged defendant with willfully and unlawfully attempting to evade a police officer (Veh. Code, § 2800.4; count 1); evading police with willful and wanton disregard for public safety (Veh. Code, § 2800.2; count 2); unlawfully taking or driving a vehicle without owner's consent with a prior vehicle theft conviction (Veh. Code, § 10851, subd. (a); Pen. Code, § 666.5, subd. (a); count 3); grand theft vehicle with a prior vehicle theft conviction (Pen. Code, §§ 496, subd. (a), 666.5, subd. (a); count 4); misdemeanor possession of burglar tools (Pen. Code, § section 466; count 5); and possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a); count 6). It was further alleged that defendant had suffered eight prior felony convictions that constituted a factor in aggravation.

On June 7, 2024, outside the presence of the jury, defendant stipulated to the prior vehicle theft convictions alleged in counts 3 and 4.

4

On June 12, 2024, defendant waived his right to a jury trial on the alleged aggravating factor.

Following the People's case-in-chief, defense counsel made a motion to dismiss pursuant to Penal Code section 1118.1. The court denied the motion.

On June 13, 2024, the jurors represented that they had reached a verdict as to two counts but were hung, 11 to 1, on the other four counts. The court asked if a readback of testimony might be helpful and only one juror (TJ01) indicated that it would be. The court then read the standard jury instruction encouraging jurors to continue deliberating.

The next day, the jurors clarified that while two votes were taken, only the second vote was 11 to 1. The first vote was 10 to 1, with one juror abstaining.

On June 14, 2024, the original jury foreperson (TJ03) advised the court that juror number 11 (TJ11) had looked something up on the internet and tried to share it during deliberations. When questioned by the court, TJ11 admitted to looking up a map of the area in which defendant was arrested that showed a pathway and claimed to have not shown anyone else. Jurors TJ01, TJ02, TJ07, and TJ208 did not hear what TJ11 said about looking something up on the internet. Juror TJ04 heard TJ11 say she found another aerial view of the location. TJ11 was told that the jury could not look at the image and she showed it to no one. TJ05 remembered TJ11 saying something about a map she found online. TJ06 heard someone mention finding a map on the internet but did not know which female juror said it. Jurors TJ09, TJ10 and TJ12 all heard TJ11 say she looked up a map of the location on her phone. Jurors TJ03 and TJ07 indicated they did not see the map and it would not influence their deliberations. The court excused juror

5

TJ11.  Juror TJ06 also expressed concern with the foreperson (TJ03).  The juror believed that the foreperson misrepresented the previous votes to the court and that the foreperson was also not open to hearing anyone else's opinion and stated she would not change her mind.  A later question from the jury indicated TJ06 was now the foreperson.  At the conclusion of the court's questioning of the jurors, defense counsel made a motion for a mistrial, which was denied by the court.

On June 17, 2024, the jury found defendant guilty as charged of all six counts.  In a bifurcated proceeding, the trial court found that defendant had suffered at least eight prior felony convictions.  Defendant was sentenced to an aggregate term of three years, eight months as follows:  the middle term of three years on count 3, plus one-third the middle term or eight months on count 1.  The court stayed the sentence on counts 2 and 4 pursuant to Penal Code section 654, and imposed a concurrent term on count 5 and dismissed count 6 in the interest of justice pursuant to the People's motion.  The court awarded defendant 118 actual days plus 118 conduct credits, for a total presentence credit of 236 days.  The court also ordered defendant to pay a $300 restitution fine; a stayed $300 parole revocation fine; $200 in court security fees; and $150 in criminal conviction assessments.  Defendant timely appealed.

III.

DISCUSSION

After defendant appealed, upon his request, this court appointed counsel to represent him.  Upon examination of the record, counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California*

6

(1967) 386 U.S. 738 (*Anders*), setting forth a statement of the case, a summary of the facts and potential arguable issues, and requesting this court to conduct an independent review of the record. Counsel identifies the possible issue as whether the trial court erred in denying defendant's motion for mistrial based on juror misconduct.

We offered defendant an opportunity to file a personal supplemental brief, and he has done so. In his general conclusory letter brief, defendant appears to argue there was insufficient evidence, juror bias or court's failure to grant motion to dismiss based on juror misconduct, and discovery violation due to the destroyed backpack.

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) In undertaking this review, our job does not include reweighing conflicts in the evidence or assessing witness credibility. (*People v. Boyer* (2006) 38 Cal.4th 412, 480; see *People v. Zaragoza* (2016) 1 Cal.5th 21, 44 [it is not the task of a reviewing court to "resolve credibility issues or evidentiary conflicts"].) Moreover, "unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Here, there is sufficient evidence in the record to convict defendant as charged. There is no dispute that a white Ford F-250 pickup truck was stolen in Riverside County and that defendant had previously been convicted of vehicle theft. Defendant and the

7

female occupant fled at a high rate of speed when Officer Larsen attempted to stop the vehicle. A pursuit thereafter ensued with defendant driving with wanton and willful disregard for public safety. The truck crossed a paved center median, drove in the wrong direction, weaved between stopped vehicles at a high rate of speed, and traveled the wrong direction on the shoulder on the freeway. The truck eventually collided with a concrete culvert. Defendant and his female occupant were found near the area where they had fled. Defendant's shoes had dirt on them consistent with the area in which the truck crashed. Defendant had a shaved key in his wallet and methamphetamine in his possession. In addition, a gray backpack was discovered in the truck behind the driver's seat. The backpack contained California identification cards belonging to defendant, as well as a letter addressed to defendant and two citations, one written to defendant. Although the backpack and its contents were destroyed by law enforcement, defense counsel thoroughly examined the officer as to this fact in an attempt to undermine law enforcement's credibility. Based on the foregoing, there was sufficient evidence to convict defendant as charged.

We also reject defendant's claim of juror bias or court's failure to grant motion to dismiss based on juror misconduct. "The federal and state Constitutions guarantee a criminal defendant the right to a trial by an impartial and unbiased jury. [Citations.] A deprivation of that right can occur even if only one juror is biased. [Citation.]" (*People v. Brooks* (2017) 3 Cal.5th 1, 98 (*Brooks*).) "When a court becomes aware of possible juror misconduct, it must ' " ' "make whatever inquiry is reasonably necessary" to determine whether the juror should be discharged.' " ' [Citation.] The nature of the

8

court's inquiry may consist of a full hearing or informal questioning of the juror in the presence of counsel. [Citation.] 'The specific procedures to follow in investigating an allegation of juror misconduct are generally a matter for the trial court's discretion.' [Citation.]" (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1170; see Pen. Code, § 1089 [trial court may discharge juror for good cause if juror unable to perform duty].)

" '[T]he presumption of prejudice is rebutted, and the verdict will not be disturbed, if a reviewing court concludes after considering the entire record, including the nature of the misconduct and its surrounding circumstances, that there is no substantial likelihood that the juror in question was actually biased against the defendant. [Citations.] Our inquiry in this regard is a "mixed question of law and fact" subject to independent appellate review. [Citation.] But " '[w]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence.' " ' [Citation.]" (*Brooks*, *supra*, 3 Cal.5th at pp. 98-99.)

Applying these principles, we conclude that although substantial evidence supports the conclusion TJ11 juror committed misconduct, the presumption of prejudice was amply rebutted and the court did not err by refusing to declare a mistrial or dismiss the case. A review of the record reveals that the trial court thoroughly examined the jurors concerning juror misconduct and excused the offending juror (TJ11).

Accepting the trial court's credibility determinations and factual findings, and in light of the circumstances surrounding the misconduct and the record as a whole, we conclude there was no substantial likelihood the jurors were actually biased against defendant. The evidence of misconduct consisted of one juror (TJ11) looking up a map

9

of the area in which defendant was arrested and trying to share it to other jurors during deliberations. Most of the jurors reported not hearing what TJ11 said and others reporting that they told TJ11 that she could not share that information. The record includes no evidence any juror was biased against defendant or his counsel, or prejudged the case. Moreover, because the trial court quickly learned of the information, it was able to question the jurors and evaluate what occurred while the jurors' memories were fresh. It was the trial court that was in the best position to observe the jurors' demeanor and determine whether they were biased. (*People v. Jackson* (2016) 1 Cal.5th 269, 334.) After conducting an extensive inquiry of the jurors, the court further admonished them to not research or discuss the case and to keep an open mind. These admonitions were sufficient, and defendant's claim the jurors were biased is pure speculation. (*People v. Harris* (2013) 57 Cal.4th 804, 857 [rejecting defendant's assertion of juror misconduct, we presume the jury understands and follows the trial court's instructions].)

In conclusion, although TJ11 committed misconduct, based on an examination of the entire record, the inference of bias was rebutted. The trial court did not err by denying the mistrial motion, and reversal is not required. Thus, defendant's federal and state constitutional rights to an impartial and unbiased jury were not violated.

Finally, we reject defendant's implied claim of discovery violation. Due process guarantees under the federal Constitution imposing a duty on the state to preserve "evidence that might be expected to play a significant role in the suspect's defense." (*California v. Trombetta* (1984) 467 U.S. 479, 488; see *Arizona v. Youngblood* (1988) 488 U.S. 51.) Such evidence " 'must both possess an exculpatory value that was apparent

10

before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' " (*People v. Montes* (2014) 58 Cal.4th 809, 837.) Rather than establishing the apparent exculpatory value of the lost evidence, a defendant also may show that the " ' " 'potentially useful' " ' " evidence was destroyed as a result of bad faith. (*People v. Fultz* (2021) 69 Cal.App.5th 395, 424-425.) In this case, there is no indication in the record that law enforcement destroyed the backpack and its content found in the stolen truck in bad faith or that the evidence was exculpatory. In fact, the destroyed evidence was more useful to the prosecution than defense. We find no discovery violation.

An appellate court conducts a review of the entire record to determine whether the record reveals any issues which, if resolved favorably to defendant, would result in reversal or modification of the judgment. (*People v. Wende*, *supra*, 25 Cal.3d at pp. 441-442; *People v. Feggans* (1967) 67 Cal.2d 444, 447-448; *Anders v. California*, *supra*, 386 U.S. at p. 744; see *People v. Johnson* (1981) 123 Cal.App.3d 106, 109-112.)

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the entire record for potential error and find no arguable error that would result in a disposition more favorable to defendant.

## IV.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

McKINSTER

      Acting P. J.

RAPHAEL

      J.