Filed 5/13/25  P. v. Barraza CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID ALEJANDRO BARRAZA,<br><br>    Defendant and Appellant. | E084198<br><br>(Super.Ct.No. FVI22000425)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Rasheed Alexander, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

# I.

## INTRODUCTION

A jury found defendant and appellant David Alejandro Barraza guilty of assault (Pen. Code,[1] § 240), the lesser included offense of assault with firearm (§ 245, subd. (a)(2)) as alleged in count 1; three counts of making a criminal threat (§ 422; counts 2, 7 & 8); infliction of corporal injury on a spouse or cohabitant (§ 273.5, subd. (a); count 3); and three counts of felon in possession of a firearm (§ 29800, subd. (a)(1); counts 4, 5 & 6). They also found true the allegation that defendant personally inflicted great bodily injury on his spouse or cohabitant in the commission of count 3. In a bifurcated proceeding, the trial court found true that defendant had suffered a prior serious felony conviction (§ 667, subd. (a)) and a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). The court also found true the factors in aggravation for sentencing purposes. After the trial court denied defendant's motion to strike the prior strike conviction, the trial court sentenced defendant to 14 years with credit of 548 days for time served. The court dismissed the prior serious felony enhancement in the interest of justice, and ordered defendant to pay a $2,000 restitution fine (§ 1202.4, subd. (b)), a stayed $2,000 parole revocation fine (§ 1202.45, subd. (c)), and court operations fee and criminal assessment fee (§ 1465.8, subd. (a)(1); Gov. Code, § 70373) of $70 per conviction.

---

[1] All future statutory references are to the Penal Code.

Defendant appeals from the judgment. Appointed counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*), requesting this court to conduct an independent review of the record to determine whether there are any arguable issues on appeal. In addition, defendant has had an opportunity to file a supplemental brief with this court and has not done so. After independently reviewing the record, we find no arguable error that would result in a disposition more favorable to defendant and affirm.

II.

FACTUAL BACKGROUND

C.A. and defendant had been in a relationship for 12 years. They shared an 11-year-old son and a six-year-old son. C.A. also had two daughters ages 16 and 12 from another relationship. C.A. lived with defendant and her children in Hesperia. Prior to May 27, 2021, C.A. had been in Long Beach for six days with her two brothers and was in the process of separating from defendant as she was tired of defendant never being around because of his job as a truck driver and his infidelity.

On May 27, 2021, C.A. drove to Hesperia with her brothers, M.A. and D.A., to retrieve her property and separate from defendant. C.A. entered the house alone and told defendant why she was leaving him. At trial, C.A. testified that she was the aggressor and that she had stumbled and injured herself resulting in the injuries shown in the photographs admitted into evidence and for which she went to the hospital for treatment. She also stated that she and defendant had a loud argument for about 30 minutes.

3

C.A.'s brother M.A. testified that C.A. screamed and yelled when she entered the house. M.A. denied that he heard a gunshot, but admitted that he told Detective Joshua Gomez that he heard a gunshot. M.A. also stated that C.A. ran from the house, that she had blood over her, and that C.A. said to call 911. C.A.'s brother D.A. called 911.[2] The call was played for the jury. In the 911 call, D.A. stated that defendant was trying to kill his sister, that defendant had a gun, and that he had gone into the house to help C.A. but she was now outside the house and defendant was inside it. D.A. also said that C.A. was bleeding from the mouth and needed an ambulance and that defendant was now in the front yard of the house.

San Bernardino County Sheriff's Deputy Shawn Martin responded to the residence. C.A. was extremely upset, was bleeding, and had difficulty breathing. She hyperventilated and tried to throw up. D.A. informed the deputy that C.A. has been assaulted. Once defendant exited the residence, he was arrested.

San Bernardino County Sheriff's Detective Joshua Gomez also responded to the residence and saw C.A. sitting in a chair hysterically crying when he arrived. C.A. had a busted lip, blood coming from her mouth, blood in the nose, and scratches and abrasions on her nose. Defendant had scratches on his elbow, left hand and middle finger. C.A. was spitting and had vomited. The body worn camera from Detective Gomez's discussion with C.A. was played for the jury. C.A. made the following statements to Detective Gomez: (1) defendant might have killed her; (2) she broke up with defendant

_____

[2] D.A. did not testify as he was unavailable.

4

seven days ago and came to the house to retrieve her property; (3) defendant locked the front door of the house and started hitting her; (4) defendant hit her twice with the firearm and punched her with his fists; (5) she saw where defendant put the gun, grabbed it and pointed it at defendant and pulled the trigger but it was not loaded; (6) in response, defendant said, "'you fuckin[g] bitch, you tried to kill me,'"; (7) defendant took the firearm from C.A., pointed it at her and it went click; (8) C.A.'s brother entered and tackled defendant; and (9) defendant attempted to twice shoot C.A.

D.A. gave Detective Gomez a loaded Smith and Wesson nine millimeter firearm. It was loaded with three to four rounds but there were no rounds in the chamber. When the deputies entered the residence, they found an AK-47 firearm in the master bedroom and a Mossberg 12 gauge shotgun on the microwave oven. They also observed a bullet hole in the wall.

An emergency room physician treated C.A. The doctor had a vague recollection about C.A. being pistol whipped, and recalled that C.A. had blood coming from her mouth. The doctor put sutures in C.A.'s lip. C.A. was also treated for abdominal pain, a fractured nose and cuts to her lips.

Detective Gomez interviewed C.A. at the hospital about two hours after he saw her at the residence. She had received five stitches for her cut lips. C.A. was more relaxed but Detective Gomez could still detect fear in her voice. Detective Gomez's conversation with C.A. was recorded by his body worn camera. The recording was played for the jury. During this interview C.A. revealed: (1) she and defendant had been

5

having problems for a while but she kept giving him chances; (2) she had been out of the house for seven days before the assault occurred; (3) defendant had continuously verbally abused her and threatened her with a firearm if she left him; (4) defendant had lost his brother in February and he became more aggressive and threatened to harm C.A.; (5) she did not leave defendant because she did not want her family or herself to get hurt; (6) defendant had grabbed her three year old son and said her would kill C.A. and her son if she called the cops; and (7) defendant had assaulted her and pointed the firearm at her. C.A.'s description of the assault mostly corroborated the other statements she had made to law enforcement.

San Bernardino County Sheriff's Detective Eric Getts also interviewed C.A. on May 31, 2021. C.A. was calm until defendant was mentioned. Her demeanor changed and she displayed fear. Detective Getts' interview with C.A. was recorded and played for the jury. C.A. made the following statements during the interview: (1) defendant had pointed the firearm at her five or six times and pulled the trigger once; (2) the firearm was pointed at C.A.'s head when defendant pulled the trigger; (3) defendant had stated he was going to kill C.A. and himself because he did not want her to be happy; (4) defendant was not going to stop until C.A. was dead; (5) defendant had been threatening C.A. for many years and this time he had threatened to kill her with the gun and she took it seriously; (6) C.A. had to fight for her life; (7) defendant had beat and pistol whipped C.A. with the firearm and destroyed her face; (8) the firearm had discharged when C.A. tried to get it away from defendant; and (9) the firearm was touching C.A.'s head when

6

defendant said he was going to kill her. C.A. showed Detective Getts a screenshot of a text message defendant had sent to her. The text message stated, "'I am sorry. I beg for forgiveness.'" "'This has fucked me up, my conscience. My actions has made me a fucking worthless, miserable human being. I'm miserable after realizing what I've done. I wish there was something that made me stop or something. Fuck, it is too late to go back and fix things. I could have controlled myself. It's too late. I fucked up. I blacked out. But I wish one day I will be able to hug you. I won't give up, and ask for mercy. And that this is something that happened and will never happen again, ever. I'm sorry.'"

Jobi Wood worked for the Family Assistance Program providing assistance in the area of domestic violence. She was qualified as an expert witness regarding the cycle of violence and explained how it worked.

The parties stipulated that defendant had been convicted of a felony offense.

Defendant did not present any evidence.

## III.

## DISCUSSION

After defendant appealed, upon his request, this court appointed counsel to represent him. Upon examination of the record, counsel has filed a brief under the authority of *Wende*, *supra*, 25 Cal.3d 436 and *Anders*, *supra*, 386 U.S. 738, setting forth a statement of the case, a summary of the facts and potential arguable issues and requesting this court to conduct an independent review of the record. Counsel has identified one

7

potential issue of whether the trial court erred in denying defendant's motion to dismiss his strike conviction.

We offered defendant an opportunity to file a personal supplemental brief, but he has not done so.

An appellate court conducts a review of the entire record to determine whether the record reveals any issues which, if resolved favorably to defendant, would result in reversal or modification of the judgment. (*Wende*, *supra*, 25 Cal.3d at pp. 441-442; *People v. Feggans* (1967) 67 Cal.2d 444, 447-448; *Anders*, *supra*, 386 U.S. at p. 744; see *People v. Johnson* (1981) 123 Cal.App.3d 106, 109-112.)

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the entire record for potential error and find no arguable error that would result in a disposition more favorable to defendant.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


McKINSTER
Acting P. J.


RAPHAEL
J.

8